## JOHN BOWIE v. EVENING NEWS COMPANY.

*Libel — Newspaper Publication — Charge to Grand Jury —*
*Neglect of Official Duty—Prayers and Instruc-*
*tions—Justification.*

In an action for libel in imputing to plaintiff a dereliction in the performance of his duty as sheriff, defendant, by pleading justification, assumed the burden of proving that plaintiff was guilty of such official delinquency.          p. 288

When an alleged libelous charge is general in its nature, a plea of justification must specify the facts upon which the charge is founded, but when the libel consists of a specific accusation, a general averment of its truth is sufficient.          p. 289

In an action for libel in imputing to plaintiff dereliction in the performance of his duties as sheriff, defendant was not entitled to make the defense of justification unless his pleas sufficiently

notified the plaintiff as to the nature and scope of the proposed attack upon his official record.                    pp. 290, 291

Intimations in a newspaper article of corruption in official circles, of which plaintiff sheriff formed a part, and of some dereliction of duty by him in some way connected with the increase in bootlegging, *held* general and not specific, and consequently to require pleas of justification by defendant to specify the facts on which the accusation was founded.        p. 292

In an action for libel, an officer of defendant newspaper company, though admitting that he had no actual knowledge, could state, when asked as to malice in the publication, that "apparently the story was not handled in a way that would indicate malice," he having previously testified that the prominence given the article in question conformed to defendant's custom of displaying news reports according to their relative importance.

p. 292

Rulings to which exceptions were not reserved when they were made are not properly before the appellate court.        p. 293

The effort of defendant in an action for libel to justify the defamatory statement entitles the plaintiff to prove his previous good reputation in regard to the element of his character traduced.                    p. 293

In an action for libel in publishing what purported to be a report of a charge by a judge to the grand jury, reflecting on plaintiff's official conduct as sheriff, a prayer offered by plaintiff, involving the theory of actual malice in the publication, *held* properly refused, it failing to refer to the plea of justification, and to the issue whether the published report of the judge's charge was correct, and there being lack of evidence of malice.                    pp. 293-295

In an action for libel it was proper to refuse a prayer which improperly assumed the libelous character of the publication.

p. 295

In an action for publishing an untrue statement that the judge of the court with which plaintiff was connected as sheriff had, in a charge to the grand jury, censured plaintiff for neglect in the performance of the latter's official duties, it was no defense that such a censure was deserved, an untrue statement that it was pronounced by the judge involving a distinct wrong.

pp. 295, 296

Defendant's publication having in effect asserted that the judge had commented on plaintiff's neglect of duty as regards the custody of prisoners in the jail, and there being a conflict of theories at the trial as to the relative responsibility of the sheriff and the warden of the jail in this regard, it was proper to instruct the jury, as is provided by Code, art. 87, sec. 44, that the sheriff was the legal custodian of such prisoners.          p. 297

Acts 1920, ch. 679, providing that the sheriff of Anne Arundel County "shall be allowed a warden to the jail" did not relieve the sheriff of the responsibility, imposed on him by Code, art. 87, sec. 44, for the care and control of the prisoners in the jail.
p. 297

*Decided June 29th, 1926.*

Appeal from the Superior Court of Baltimore City (STEIN, J.).

Action by John Bowie against the Evening News Company and others. From a judgment for the defendant named, plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., URNER, ADKINS, DIGGES, and PARKE, JJ.

*L. Wethered Barroll* and *Eugene P. Childs,* with whom were *James J. Lindsay* and *John W. Barroll* on the brief, for the appellant.

*George Weems Williams* and *L. Vernon Miller,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

On the former appeal by the plaintiff in this case, from a judgment on demurrer for the defendant (*Bowie v. Evening News Co.,* 148 Md. 569), we held that the declaration stated a good cause of action for libel, and we, therefore, reversed the judgment and remanded the case for further proceedings. The alleged libel consisted of the publication by the defendant in the Baltimore News of the following statement:

"(Special Dispatch to the News), Annapolis, Oct. 20.—Corruption in official circles of Annapolis and Anne Arundel County was strongly hinted at by Judge Robert Moss of the circuit court in his charge to the grand jury this morning. The judge's charge also included a stinging rebuke to Sheriff Bowie of the county. After declaring the increase of bootlegging was a disgrace to the county, Judge Moss said a clean-up of conditions was in order. He referred to Garfield Chase (colored), who was employed as a 'stool pigeon' by the sheriff's office in running down bootlegs, and said repeated attempts to tamper with Chase and make him useless as a State's witness had been made. He blamed Sheriff Bowie for permitting these attempts, and intimated that a member of the city police force was responsible for them. The court insisted that Chase be indicted either for bootlegging or for perjury, and urged the jury to go to the bottom of the plot to save those against whom Chase was to testify."

This publication was held to be actionable *per se* as imputing to Sheriff Bowie, the plaintiff, a dereliction in the performance of his official duty in regard to the enforcement of the prohibitory liquor law of the county. After the remand of the case to the Superior Court of Baltimore City, the defendant filed a general issue plea to the declaration, and also special pleas denying the alleged falsity of the published statement, and alleging that it was a substantially correct report of Judge Moss' charge to the grand jury, and was a privileged publication. The trial resulted in a verdict for the defendant, and on this second appeal by the plaintiff, the questions to be decided are raised by a demurrer to the special pleas and by certain exceptions relating to the evidence and the prayers.

In denying that the charges against the plaintiff in the publication complained of were false, the special pleas in effect asserted the truth of the accusations. By thus pleading justification, the defendant assumed the burden of proving that the plaintiff was in fact guilty of the official delin-

quency imputed to him in the newspaper report under consideration. *McBee v. Fulton,* 47 Md. 403. If the defendant had relied simply upon its qualified privilege in publishing reports of judicial proceedings, that defense would have been sustainable, in the absence of actual malice, by proof that the published summary of Judge Moss' charge to the grand jury was substantially correct. But in averring that the reported charges were true, the defendant raised an issue of fact which the plaintiff was entitled to have properly defined for the purposes of the trial. The point of the demurrer to the pleas is that they fail to specify the acts or omissions to which the imputation against the plaintiff's official conduct, as printed by the defendant, is intended to refer.

When an alleged libelous charge is general in its nature, a plea of justification must specify the facts upon which the charge is founded, but when the libel consists of a specific accusation, a general averment of its truth is sufficient. *Bingham v. Gaynor,* 203 N. Y. 27; *Dowie v. Priddle,* 216 Ill. 553; *McLaughlin v. Cowley,* 127 Mass. 316; *Hauger v. Benua,* 153 Ind. 642; *Salinger v. Cowles,* 195 Iowa, 873; *Herald Publishing Co. v. Feltner,* 158 Ky. 35; *Stark v. Knapp,* 160 Mo. 529; *Callfas v. World Publishing Co.,* 93 Neb. 108; *Fodor v. Fuchs,* 77 N. J. L. 92; *Amos v. Stockert,* 47 W. Va. 109; *Krulic v. Petcoff,* 122 Minn. 517; 37 *C. J.* 43-4; 17 *R. C. L.* 400.

In the first of the cases just cited, the Court of Appeals of New York said: "A general allegation charging a person with something that is libelous *per se* cannot be successfully answered by a general allegation in the answer that the charge is true. In *Wachter v. Quenzer,* 29 N. Y. 547, 552, this court referring to this subject say: 'Take, for instance, a charge that one is a thief or a murderer, or that he has committed perjury. A statement in the answer that the words are true would not be a justification, and it would fall just as far short of being a statement of facts to

be proved by way of mitigation. It is a statement of nothing. It is simply a repetition of the libel. The reason for this rule is that it does not give to the plaintiff any clue of what the defendant intends to prove upon the trial. The answer in such a case ought to set forth the facts upon which it is alleged that the allegations of the complaint are true. A mere general statement of the truth of the allegations of the complaint is a conclusion and does not constitute a sufficient answer when considered upon demurrer. There is an exception, however, to the rule that a plea must be specific in its denial, and that is where the charge is specific. Take, for instance, a charge that the defendant, on a day and at a place named, took specified articles of personal property under such specified circumstances as to justify the conclusion that the taking was willful and a larceny. In such a case an answer can be interposed alleging generally the truth of the specific statements of fact alleged in the complaint by the publication of which it is charged the plaintiff has been libelled." In that case the libel included the following language in reference to the plaintiff: "Scoundrelism." "The police commissioner is doing all he can to make it impossible for him (Duffy) to lead an honest life and make an honest living and to force him (Duffy) instead to a life of crime." "Incompetents, corruptionists and sometimes buffoons who are put in rulership over" the men on the police force. "It is an ordinary thing for the police commissioner to refuse to obey the decisions of the courts and compel the police force to disobey them." "The despotism and lawlessness of the police commissioner is shocking." These charges were said by the court to be "general in terms," and to require "a specific and not a general answer."

In the present case it is urged by the plaintiff that the quoted allusions to him in the defendant's newspaper were general reflections upon his official conduct, and that the defendant should not have been permitted to assert at the trial that the imputations were true, without specifying by pleas

the particular charges which he would be required to meet. The conceded purpose of the pleas, in denying that the published references to the plaintiff were false, was to enable the defendant to offer evidence that the publication was true and therefore justified, and testimony designed to support that theory was in fact offered and admitted. But the defendant was not entitled to make such a defense unless the pleas sufficiently notified the plaintiff as to the nature and scope of the proposed attack upon his official record. The adequacy of the pleas, for the purposes of a defense of justification, depends upon the question as to whether the charges said to be libelous were general or specific.

In considering on the former appeal the meaning and effect of the publication, and deciding that the declaration alleging it to be a libel was not demurrable, the Court, speaking through Judge Offutt, said that "the natural and plain inference to be drawn from the whole article, including the headlines, is that Bowie was rebuked for some dereliction in the discharge of the duties of his office which was connected in some way with the increase of 'bootlegging,' which was a 'disgrace'," and that the "plaintiff was a public official, enjoying his office as a result of public confidence and trust, and when the public were informed in the most striking and conspicuous manner by a powerful and influential journal widely circulated that he had been officially rebuked by the very court which his duties required him to serve, and when that statement was followed by the charge that that court had hinted at 'corruption' in 'official circles of Annapolis and Anne Arundel,' of which 'circles' he was a part, and by the further charge that the 'increase of bootlegging was a disgrace to the county, and that the court had blamed him for permitting a State's witness used in such cases to be tampered with, the natural and likely impression which it would convey to the average and ordinary reader would be that the court had rebuked Bowie because his conduct had shown him unfit to perform the duties of his office, and it was, assuming that the charge was false and malicious, and that no such statement was made by the court, libelous *per se*."

The intimations of corruption in official circles of Annapolis and Anne Arundel County, and of delinquency in checking the increase of bootlegging, were certainly not specific accusations. As already construed by this Court, they were merely general imputations of unfitness of the plaintiff for his office as sheriff, and of "some dereliction" of duty "which was connected in some way with the increase of bootlegging." The statement in the report of the judge's charge that he blamed the plaintiff for permitting attempts to tamper with a "stool pigeon" employed by the sheriff's office in detecting bootleggers, and to make him useless as a State's witness, was held in the former opinion not to impute dishonesty to the plaintiff, as averred by *innuendo* in the declaration, since there was "nothing in the article or elsewhere to indicate how he could have prevented the attempts."

We have not found any cases in which pleas asserting generally the truth of such general publications as those here under discussion were held to be adequate for the purposes of a defense of justification. To sustain such pleas in this case would be to oppose the uniform trend of the decisions in relation to a reasonable rule of pleading designed to serve the practical ends of justice. In our opinion the demurrer to the special pleas should have been sustained.

The first exception was taken in the course of the testimony of Mr. John E. Cullen, vice-president of the defendant corporation, who was called by the plaintiff as a witness to prove the publication in controversy. On cross-examination he was asked whether the defendant in making the publication was animated by actual malice. As Mr. Cullen was not then in charge of the Baltimore News, he confined his answer to the statement: "Apparently the story was not handled in a way that would indicate any malice." The objection was that Mr. Cullen had disqualified himself to answer the question by admitting that he had no personal knowledge on the subject. In his previous testimony he explained that the prominence given the article in the newspaper was in conformity with the defendant's custom of displaying news reports according to their relative importance. This was evi-

dently the basis and meaning of the answer to the question involved in the first exception.    There is no ground of reversal in this ruling.

The bills of exceptions numbered two to eight inclusive were refused signature by the trial judge because at the time of the rulings therein mentioned no exceptions were reserved. That refusal was the occasion of the fifteenth exception.    The appellant's brief states that it was understood to be the practice of the judge presiding at the trial to allow exceptions in every instance to the party against whom he ruled.    The record does not support that theory, and as the exceptions were not in fact reserved when the rulings were made, they are not properly before us for consideration.    *Mitchell v. State,* 115 Md. 360; *Baltimore Bldg. Assoc. v. Grant,* 41 Md. 560.

The ninth, tenth, eleventh, twelfth, and thirteenth exceptions refer to the exclusion of testimony offered by the plaintiff in rebuttal to prove that prior to the publication in question he enjoyed a good reputation for fidelity to the official duty with respect to which he claims to have been maligned. The effort of the defendant to justify the defamatory statement entitled the plaintiff to prove his previous good reputation in regard to the element of his character thus traduced. *Bavington v. Robinson,* 127 Md. 46; *McBee v. Fulton, supra.* But the testimony excluded by the rulings which are disputed by the last noted exceptions was not so clearly competent to prove the reputation under inquiry as to require us to hold that the rulings were erroneous.

The plaintiff offered ten prayers, one of which only, marked "A," was granted.    The prayer of the plaintiff designated "B" involved the theory of actual malice in the publication which occasioned the suit.    There was no reference in the prayer to the plea of justification, and apart from the possible effect of that plea, if found to be unsustained (*Coffin v. Brown,* 94 Md. 190), there was no evidence from which the jury could find that the defendant was influenced by a malicious motive.    The report and publication of Judge Moss' charge to the grand jury occurred in the

usual course of the defendant's journalistic service. It appears from the testimony that the charge as delivered did not mention the plaintiff by name, but the language of the charge, as repeated in effect by Judge Moss when testifying in this case, was readily susceptible of the construction that it applied to the plaintiff as a criticism of his official conduct. It was so understood by witnesses who heard the charge, and who testified that the report of it published by the defendant was in substantial accordance with the impression made upon their minds when the charge was delivered. In reality, as stated by Judge Moss in his testimony, no censure of the plaintiff was intended. Laxity in the management of the jail was condemned, and in that connection the reference was made to the effort, which was apparently successful, to tamper with Chase, who was held at the jail as a State's witness. Having heard a rumor of such an occurrence, Judge Moss asked the plaintiff to make an investigation, and, upon his report as to the facts he ascertained, the charge to the grand jury on that subject was based. But as the official commonly supposed to be responsible for the custody of persons committed to the jail, the plaintiff would naturally be understood, though not named in the charge, to be involved in the criticism of the manner in which that important duty was being performed. There is a local law of Anne Arundel County (Acts of 1920, ch. 679) which provides that the sheriff "shall be allowed a warden to the jail to be appointed by the county commissioners * * *." The view of Judge Moss as to the responsibility for the custody of prisoners in the jail is thus expressed in his testimony: "The warden has charge of the prisoners while they are in jail. From the sheriff's multiplicity of duties he cannot be there all the time. Taking them in and out of the jail is exclusively the function of the sheriff or his deputies." An explanation of the misconstruction of his charge is suggested in the following extract from the testimony of Judge Moss on cross-examination: "Q. Well, now, if you will read the whole article,

and I would ask you the question whether the article there is an article that is substantially correct, what would you say? A. Do you want me to tell you? Q. Yes. A. The man that wrote it did not know of the dual system at the jail—I do not know whether I ought to, but if you want me to tell—Q. Go ahead. A. Like all newspaper people, he had to find the goat. Q. In other words, he heard the criticism of the jail management? A. Yes. Q. And jumped to the conclusion that the sheriff was at the head of the jail management? A. I think so. I think he jumped at the conclusion he was the sole head of the jail management. I think that is often the case in a good many of the counties but I am not prepared to say."

The refusal of the plaintiff's "B" prayer was proper for the reasons we have indicated, and also because it omitted to make any reference to the issue as to whether the published report of the charge to the grand jury was substantially correct. The latter objection also applies to the plaintiff's prayers marked first, second, third, and eighth. The fourth prayer of the plaintiff improperly assumes the "libelous" character of the publication. The granting of the fifth prayer would have submitted a question of law to the jury. In its abstract form, and under the circumstances of the case, the plaintiff's sixth prayer would not have been a proper instruction. The purpose of the plaintiff's seventh prayer was served by his "A" prayer which was granted, and in the refusal of the additional prayer to the same effect there was no error.

Of the sixteen prayers offered by the defendant the court below granted the ninth, eleventh, fifteenth, and sixteenth. The ninth prayer was as follows: "The court instructs the jury that if they shall find from the evidence that the statements contained in the article complained of, in so far as they refer to the plaintiff, are substantially true, then their verdict must be for the defendant, even though the jury shall find that the said statements were not a fair or impartial report of and comment on the remarks made by his

Honor, Judge Robert Moss, in his charge to the grand jury of Anne Arundel County on October 20, 1924."

The general rule on the subject is that if the truth of the statement alleged to have been defamatory is pleaded in justification and is established by proof, it is a complete and effectual defense to the action. *McBee v. Fulton, supra.* In this case the plaintiff's asserted grievance is that he was defamed by the publication of a false report that he had been subjected to censure for official neglect in a charge to the grand jury delivered by a judge of the court under whose jurisdiction the plaintiff's service as sheriff was required to be rendered. The question raised by the prayer quoted is whether the defendant would be exempted from liability for erroneously attributing to the judge such a reflection upon the plaintiff, if the evidence in the case proved that the censure, though not pronounced, was really deserved. It seems to us that with respect to such a defamation as the one now being considered, and in a suit of this nature, it is a material and distinguishing fact that the authorship of the condemnatory statement was ascribed to a judicial officer whose rebuke of the plaintiff would be particularly discrediting. No case has been cited in which the general rule referred to has been applied to such conditions as those with which we are now concerned. It was not for specific acts of malfeasance, but with laxity in the administration of his office, that the plaintiff was reported to have been rebuked. In our judgment, the actual existence of such laxity would not justify an unfounded newspaper report that the plaintiff had been formally and publicly censured for official delinquency by the court with which he was officially connected. The stigma thus untruthfully placed upon him would constitute a distinct wrong. We are, therefore, unable to approve the theory of the defendant's ninth prayer as applied to the special circumstances of this case.

The defense that the publication was substantially correct, as presented by the defendant's eleventh and sixteenth

prayers, was properly submitted to the jury for consideration.

In view of the conflict of theories at the trial upon the question as to the relative responsibility of the sheriff and the warden for the custody of the prisoners in the jail of Anne Arundel County, we think the lower court properly granted an instruction, as requested by the defendant's fifteenth prayer, that the sheriff was the legal custodian of prisoners lodged in the jail and committed to his custody by lawful authority. The common law functions of the Sheriff of Anne Arundel County as a constitutional officer undoubtedly included the care and control of prisoners committed to the county jail, and while it is competent for the Legislature to relieve him of that duty (*Beasley v. Ridout,* 94 Md. 641; *Cocking v. Wade,* 87 Md. 529; *Baltimore v. State,* 15 Md. 376), there is no existing enactment which has such an effect. The Act of 1920, heretofore cited, does not authorize the withdrawal of the sheriff's control from the jail or the prisoners, though it provides for the appointment and payment of the warden by the county commissioners. There are explicit provisions in the act for the administration of the jail by the sheriff, to whom the warden is "allowed" by the statute for that purpose. It is provided by section 44 of article 87 of the Code that the "sheriff shall safely keep all persons committed to his custody by lawful authority until such persons are discharged by due course of law." The definition by the prayer of the sheriff's custodial power was, therefore, correct.

All of the rulings excepted to have now been reviewed, and because of our inability to affirm the ruling on the demurrer to the special pleas and the granting of the defendant's ninth prayer, the judgment will be reversed and the case remanded for a new trial.

*Judgment reversed with costs, and new trial awarded.*

ADKINS, J., dissents.