RUDOLPH FURGANG SOPER *v.* MONTGOMERY
COUNTY, MARYLAND

[No. 106, September Term, 1981.]

*Decided September 17, 1982.*

332

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*F. Robert Troll, Jr.,* with whom were *Nylen & Gilmore* on the brief, for appellant.

*Thomas J. Davis, Assistant County Attorney,* with whom was *Paul A. McGuckian, County Attorney,* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents the question whether paid deputy sheriffs [1] are entitled to a presumption of compensable occu-

---

1. Throughout this opinion, the term "deputy sheriffs" means paid deputy sheriffs.

pational disease accorded to police officers under Maryland Code (1957, 1979 Repl. Vol.), Art. 101, § 64A. That section provides in pertinent part:

"(a) Any condition or impairment of health of any paid municipal, county, State, airport authority or fire control district, fire fighter or fire fighting instructor caused by lung diseases, heart diseases, or hypertension and any condition or impairment of health of *any paid State, municipal, Maryland-National Capital Park and Planning Commission, county or airport authority police officer* caused by heart diseases or hypertension resulting in total or partial disability or death shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment." (Emphasis added.)

In 1978, the petitioner, Rudolph Furgang Soper, then a Montgomery County paid deputy sheriff (deputy sheriff), was diagnosed by a physician as suffering from heart disease and was placed on administrative sick leave by his employer, Montgomery County. After the deputy sheriff was hospitalized, a physician employed by Montgomery County determined that the deputy sheriff's medical condition rendered him incapable of performing his duties and, effective 1 September 1979, the deputy sheriff was administratively retired by Montgomery County.

In 1979, the deputy sheriff filed a claim for compensation with the Workmen's Compensation Commission (Commission). At a hearing, counsel for both parties stipulated that the single issue to be resolved was, in essence, the question presented here. The Commission found "that a Montgomery County Deputy Sheriff is not a 'police officer' within Section 64A of Article 101" and ordered that the deputy sheriff's claim be disallowed.

The deputy sheriff appealed to the Circuit Court for Montgomery County. That Court granted Montgomery County's motion for summary judgment and ultimately entered a final judgment in favor of Montgomery County.

On 24 June 1981, the deputy sheriff appealed to the Court of Special Appeals, and on 22 September 1981, he filed a petition for a writ of certiorari in this Court. We issued such a writ before consideration by the Court of Special Appeals. We shall affirm the judgment of the trial court.

The deputy sheriff contends that sheriffs are constitutional officers who, notwithstanding the delegation of certain duties to state, county, and municipal police officers, retain the powers they possessed at common law. The deputy sheriff asserts that these powers include conserving public peace, preserving public order, preventing and detecting crime, enforcing criminal laws by, among other things, raising a posse and arresting persons who commit crimes in their presence, providing security for the courts, serving criminal warrants and other writs and summonses, and transporting prisoners. The deputy sheriff maintains that, under these circumstances, and the powers of and duties performed by sheriffs and, therefore, by their deputies are identical or substantially similar to and concurrent with those of police officers and that deputy sheriffs are, therefore, subjected to similar risks and stresses. He points out that the Legislature, recognizing this similarity of functions, has frequently extended certain rights and benefits to and imposed certain obligations upon sheriffs and police officers alike. *E.g.,* Md. Code (1957, 1982 Repl. Vol.), Art. 27, § 594B (f) (9) & (10) (power to arrest without warrant); Md. Code (1957, 1982 Repl. Vol.), Art. 27, § 727 (b) (5) (Law Enforcement Officers' Bill of Rights); Md. Code (1957, 1978 Repl. Vol., 1981 Cum. Supp.), Art. 41, § 59A-1 (death benefits); Md. Code (1957, 1978 Repl. Vol. & 1981 Cum. Supp.), Art. 41, § 70A (a) (4) & (8) (training requirements); Md. Code (1957, 1979 Repl. Vol.), Art. 88B, § 2 (e), § 4 (a), & § 5 (general concurrent powers); *see* Md. Code (1957, 1982 Repl. Vol.), Art. 27, § 36B (c) (1) (v) (carrying a handgun when engaged in law enforcement activities). The deputy sheriff claims, therefore, that the term "police officer" contained in Art. 101, § 64A (a) is ambiguous and argues that that term was legislatively intended to encompass deputy sheriffs. He ultimately concludes that a

Montgomery County deputy sheriff is encompassed in the term "police officer" contained in Art. 101, § 64A (a). We do not agree with this ultimate conclusion.

The cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the Legislature. Statutes are to be construed reasonably and with reference to the purposes to be accomplished. *E.g., Montgomery v. State,* 292 Md. 155, 159, 438 A.2d 490, 491 (1981); *Howard County Ass'n for Retarded Citizens, Inc. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980); *Comptroller of the Treasury v. John C. Louis Co.,* 285 Md. 527, 538-39, 404 A.2d 1045, 1052-53 (1979). The Workmen's Compensation Act should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. *Trotta v. County Car Center, Inc.,* 292 Md. 660, 663, 441 A.2d 343, 344 (1982); *Bethlehem-Fairfield Shipyard, Inc. v. Rosenthal,* 185 Md. 416, 425, 45 A.2d 79, 83 (1945); Art. 101, § 63. That which necessarily is implied in the statute is as much a part of it as that which is expressed. *Guardian Life Ins. Co. of America v. Insurance Comm'r of Maryland,* 293 Md. 629, 643, 446 A.2d 1140, 1148 (1982); *Chillum-Adelphi Volunteer Fire Dept., Inc. v. Board of County Comm'rs for Prince George's County,* 247 Md. 373, 377, 231 A.2d 60, 62 (1967); *Restivo v. Princeton Constr. Co.,* 223 Md. 516, 525, 165 A.2d 766, 771 (1960). However, neither statutory language nor legislative intent can be stretched beyond the fair implication of the statute's words or its purpose. *Chillum-Adelphi,* 247 Md. at 377, 231 A.2d at 62. Applying these principles to the instant case produces a clear result.

The purpose of Art. 101, § 64A is implicit in the language of the statute, and was recognized by this Court in *Board of County Commissioners for Prince George's County v. Colgan,* 274 Md. 193, 198-99, 334 A.2d 89, 92-93 (1975), a case involving fire fighters. There, in holding that the statute did not violate the equal protection clause and was, therefore, constitutional, this Court said:

" 'In the subject statute the legislature has seen fit to grant to fire fighters a presumption that a

disability arising from lung and heart diseases was suffered in the line of duty and as a result of their employment. There is general public knowledge that *fire fighters, in the course of their daily activities,* are exposed to inhalation of smoke or noxious fumes and *are subjected to unusual stresses and strains.* An adequate constitutional base exists here.'

. . .

"Finally, ... not only may the Legislature properly determine that *fire fighters are exposed to health hazards not shared by other government employees,* but it may also rationally determine that *full-time fire fighters are subject to greater hazards than unpaid fire fighters: volunteers and those whose principal duties do not involve fighting fires.*" *Colgan,* 274 Md. 205-06, 208, 334 A.2d 96, 97 (emphasis added).

Thus, this Court indicated that the purpose of Art. 101, § 64A is to provide a presumption of compensable occupational disease to certain classes of public employees including police officers who, in the course of their daily activities, are subjected to unusual hazards, stresses, and strains. If this purpose is to be effectuated, the functions that deputy sheriffs do, in fact, perform as a primary part of their daily activities, and not the functions that sheriffs and their deputies are authorized to perform, must control. Thus, in order to be encompassed within the term "police officer" contained in Art. 101, § 64A (a), deputy sheriffs must perform, as a primary part of their daily activities, those law enforcement duties ordinarily performed by police officers that include unusual hazards, stresses, and strains.

In determining whether deputy sheriffs are entitled to the benefits of Art. 101, § 64A (a), we note that ordinarily sheriffs retain the powers they possessed at common law including conserving public peace, preserving public order, preventing and detecting crime, enforcing criminal laws by, among other things, raising a posse and arresting persons

who commit crimes in their presence, providing security for courts, serving criminal warrants and other writs and summonses, and transporting prisoners. *South v. Maryland,* 59 U.S. 396, 402 (1856); *Beasley v. Ridout,* 94 Md. 641, 655, 52 A. 61, 64 (1902); *Turner v. Holtzman,* 54 Md. 148, 159-60 (1880); *Mayor of Baltimore v. State,* 15 Md. 376, 488-89 (1860); 57 Op. Att'y Gen. 606, 609-10, 611 (1972). We shall additionally note that ordinarily those powers are concurrent with the powers now ordinarily exercised by police officers. We need only then determine which of the sheriffs' retained common law powers deputy sheriffs do, in fact, exercise as a primary part of their daily activities.

Article IV, § 44 of the Maryland Constitution provides that there shall be an elected sheriff in each county and Baltimore City who shall "exercise such powers and perform such duties as now are or may hereafter be fixed by law." Thus, sheriffs are constitutional officers whose powers and duties are not expressly enumerated in the Constitution. Rather, those powers and duties are prescribed by the common law as modified by the Acts of the Legislature. Accordingly, sheriffs retain their common law powers and duties until deprived of them by the Legislature. *Beasley,* 94 Md. at 655-57, 52 A. at 64-65; *Mayor of Baltimore,* 15 Md. at 488.

The Legislature has codified some of the common law duties of sheriffs. *E.g.,* Md. Code (1957, 1979 Repl.Vol.), Art. 87, § 6 (accepting bail bonds or cash); Art. 87, § 26 (removing convicted criminals from the courthouse to the penitentiary); Art. 87, § 45 (keeping prisoners safely); Md. Code (1974, 1980 Repl.Vol.) § 2-301 of the Courts and Judicial Proceedings Article (serving writs); § 2-302 (executing writs of execution or attachment); § 2-303 (filing returns of service with the clerk of the court). However, it has not substantially diminished those common law duties, but rather has left them essentially intact. *See* Comment, *The Maryland Sheriff v. Modern and Efficient Administration of Justice,* 2 U.Balt.L.Rev. 282, 288 (1973). *But see, e.g., Beasley,* 94 Md. at 648, 657, 52 A. at 62, 65; 1901 Md. Laws Extra Sess., ch. 15; 1826 Md. Laws, ch. 224.

In addition, certain public local laws have prescribed sheriffs' duties. Md. Code (1974, 1980 Repl.Vol., 1981 Cum.Supp.) § 2-309 (a) of the Courts and Judicial Proceedings Article.[2] As a result, the functions of sheriffs and, therefore, their deputies,[3] in their respective counties, vary widely. 2 U.Balt.L.Rev. at 288.

Certain counties in Maryland have not established police departments.[4] The parties agree that in such counties sheriffs and their deputies are the local law enforcement officers and, as a primary part of their daily activities, ordinarily perform all of the law enforcement duties otherwise performed by police officers including those that involve unusual hazards, stresses, and strains. Because in such counties the functions performed by deputy sheriffs are identical to those ordinarily performed by police officers, it is implicit in the language of the statute that deputy sheriffs

---

**2.** § 2-309 (a) provides in pertinent part:

"The sheriff of a county and his deputies shall receive the annual salaries provided by this section for performing the *duties required of them by* the Constitution and *the laws of this State*." (Emphasis added.)

1973 Md.Laws 1st Spec.Sess.ch. 2, § 2-309, effective 1 January 1974, now appearing as § 2-309 (a) of the Cts. & Jud.Proc.Art., recodified Md. Code (1957, 1969 Repl.Vol.), Art. 87, § 37. That section provided in pertinent part:

"The sheriffs of the several counties and of Baltimore City and their deputies shall receive annually the respective salaries herein prescribed for performing the *duties required of them* by the Constitution and by the public general laws and *by their respective public local laws. . . .*" (Emphasis added.)

The Revisor's Note to 1973 Md.Laws 1st Spec.Sess.ch.2, § 2-309 states in pertinent part:

"None of the changes made in this section are of a substantive nature. . . ."

**3.** Md. Code (1974, 1980 Repl.Vol.) § 2-309 (z) of the Cts. & Jud.Proc.Art. provides in pertinent part:

"A deputy sheriff shall perform the duties incidental to the office as are assigned to him by the sheriff."

**4.** Counties that have not established police departments are as follows: Allegany, Calvert, Caroline, Carroll, Cecil, Charles, Dorchester, Frederick, Garrett, Harford, Kent, Queen Anne's, St. Mary's, Somerset, Talbot, Washington, Wicomico, and Worcester.

are encompassed within the term "police officer" contained in Art. 101, § 64A (a) and, therefore, are to be accorded a presumption of compensable occupational disease. Such a result is consonant with the purpose of the statute.

Some few counties in Maryland, however, have established police departments.[5] Montgomery County is illustrative, and demonstrates that the establishment of a police department results in a dichotomy between the daily functioning of police officers and deputy sheriffs. A review of the applicable Maryland Code provisions, Montgomery County Code provisions, Montgomery County personnel regulations, and the record in this case reveals that in Montgomery County police officers ordinarily perform law enforcement duties that involve unusual hazards, stresses, and strains as a primary part of their daily activities, whereas deputy sheriffs ordinarily do not.

With respect to the functions of police officers in Montgomery County, Montgomery County Code (1972, 1977 Repl.Vol.), § 2-43 provides in pertinent part:

> "There is hereby established a department of police. . . . *The department* shall include the county police and *shall have the authority, functions and activities which are prescribed by law.*" (Emphasis added.)

Montgomery County Code (1972, 1977 Repl.Vol., 1980 Cum.Supp.), § 35-3 provides in pertinent part:

> "(b) Law enforcement. The director of police shall take such measures as will ensure prompt and vigorous *enforcement of all criminal statutes, laws, regulations and ordinances,* enforcement of which comes properly within the scope of the police function and power." (Emphasis added.)

---

5. Anne Arundel County Charter, § 543 (1980); Baltimore City Code of Public Local Laws (1980) § 16-2; Baltimore County Code (1978), § 24-1; Howard County Charter, Art. XI § 1109 (a) (1982); Montgomery County Code (1972, 1977 Repl.Vol.), § 2-43; Prince George's County Charter, Schedule of Legislation § 12 (1979, 1981 Supp.).

Montgomery County Code (1972, 1977 Repl.Vol.), § 35-8 provides in pertinent part:

"It shall be the duty ... of the county police to serve and execute any and all writs, warrants and subpoenas and other papers issued by the circuit court ... in the exercise of its criminal jurisdiction. [T]he *police shall have all of the powers possessed by deputy sheriffs of the state under the general law of the state or the local laws of the county heretofore in existence, insofar as such powers are in reference to the criminal jurisdiction of such deputy sheriffs in making arrests or in any manner enforcing the laws of the state."* (Emphasis added.)

Montgomery County Code (1972, 1977 Repl.Vol., 1980 Cum.Supp.), § 35-21 provides in pertinent part:

"(b) Police functions — Enumerated. The functions of the county police are:

(1) The protection of life and property.
(2) The preservation of peace and order.
(3) The prevention and detection of crime.
(4) The arrest of violators of the law.
(5) The enforcement of all laws and ordinances.
(6) The prompt service of all summonses and court papers as required by law."

Montgomery County, Personnel Board Class Specification Police Officer I (class established June, 1979) provides in pertinent part:

"DEFINITION OF CLASS:

"This is the beginning level of police work within patrol requiring sworn status to maintain public peace, protect life and property, enforce laws and conduct limited investigations according to established Department procedures. ...

"An officer in this class may be responsible ... for enforcing statutes, laws, and regulations. ... *Work*

*contains considerable risk* and the officer must be able to take appropriate action *under stress.*

"EXAMPLES OF DUTIES: (Illustrative only)

"Patrol:

[R]eports crimes or unusual situations. . . . Responds to calls involving criminal violations . . . makes arrests, searches suspects for weapons and evidence and advises suspects of rights; seizes controlled dangerous substances and stolen property; transports suspects to police station; obtains arrest warrants from District Court Commissioner; fingerprints, photographs, and interrogates suspects. . . .

"Responds to calls involving major traffic accidents for other activities. . . .

. . .

[D]irects traffic at . . . locations where traffic accidents occur, unusual hazards exist, and where traffic signals malfunction.

"Serves arrest warrants and summonses issued by District Court.

. . .

[M]ay be temporarily assigned to undercover work for limited use in narcotics enforcement and other related areas." (Emphasis added.)

These relevant code provisions, as well as the personnel regulations, establish that in Montgomery County police officers ordinarily perform law enforcement activities that involve unusual hazards, stresses, and strains as a primary part of their daily activities.

With respect to the functions of sheriffs in Montgomery County, Md. Code (1974, 1980 Repl.Vol.) § 2-309 (q) of the Courts Article provides that the sheriff shall appoint, fix the compensation of and may discharge deputy sheriffs. More particularly, § 2-309 (q) (3) provides in pertinent part:

"Personnel appointed by the Sheriff shall be considered for all purposes as Montgomery County merit system employees and subject to all rules and

regulations of the Personnel Board of Montgomery County."

Montgomery County Code (1972, 1977 Repl.Vol.), § 2-6 (a) authorizes sheriffs to appoint special deputy sheriffs who "shall have the same power and authority as deputy sheriffs possess within the area to which they are appointed" and § 2-7 requires sheriffs to locate their offices at the courthouse. The Montgomery County Code, however, does not otherwise expressly delineate sheriffs' duties.

With respect to the functions of deputy sheriffs, Montgomery County, Personnel Board Class Specification Deputy Sheriff I (class established July, 1966 as revised through January, 1974), applicable under § 2-309 (q) of the Courts Article, provides:

"DEFINITION OF CLASS:

"This is beginning level regulatory and law enforcement work assisting in the serving of court documents and the enforcement of court orders.

"An employee in this class assists in the serving of writs, summonses, court orders, bench warrants and similar court documents, collects judgments, takes possession of property, and transports prisoners as directed by the courts. Work is performed under close supervision and requires the use of limited independent judgment within established laws, policies and regulations. Work is evaluated through review of reports and completed assignments.

"EXAMPLES OF DUTIES:

"Receives and processes court documents for service in civil or criminal matters.

"Locates person to be served and serves document or obtains information so that the person may be located and served.

"Returns document with appropriate notation of action taken to the Sheriff's Office for return to the Court.

"Carries out court orders by collecting judgments or taking possession of property, assuring that legal requirements are met and related documents are properly handled; delivers cash to the Sheriff's Office for deposit.

"Escorts and transports prisoners to and from correctional institutions, hospitals or courts as assigned, working within or outside the County as authorized.

"Assists in taking of inventory and sale of real and personal property attached by the Sheriff's Office.

"Performs enforcement and regulatory activities, handling of civil disturbances or emergencies, and the apprenhension of offenders.

"Participates in stake-outs as required.

"Appears in court as required.

"May be assigned to a uniform security patrol in the Courthouse.

"Keeps records of assigned activities and prepares and submits required reports.

"Assists on extradition and the return of prisoners from other states.

"Performs other related duties as required."

Finally, the record here shows that in Montgomery County deputy sheriffs ordinarily perform functions that primarily include serving bench warrants, transporting prisoners from jail to the courtroom, maintaining order in the courtroom, taking custody of persons involved in emergency petitions for commitment, and participating in evictions. Occasionally, deputy sheriffs make arrests.

All of the relevant code provisions, as well as the personnel regulations and the record here, establish that in Montgomery County deputy sheriffs, as a primary part of their daily activities, do not perform law enforcement duties ordinarily performed by police officers including those that involve unusual hazards, stresses, and strains. Moreover, all

of the relevant code provisions in those counties other than Montgomery County in which police departments have been established, support an inference that the same dichotomy exists between the daily functioning of police officers and deputy sheriffs, and that in such counties police officers ordinarily do perform law enforcement duties that involve unusual hazards, stresses, and strains as a primary part of their daily activities, whereas deputy sheriffs ordinarily do not.[6]

---

**6.** A comparison of the relevant code and charter provisions shows as follows:

I. Anne Arundel County
    A. Police officers — preserve public peace, prevent crime, apprehend criminals, operate detention center, protect persons and property, enforce the law. Anne Arundel County Charter § 544 (1980).
    B. Sheriff and deputy sheriffs — deputize citizens in emergencies. Md. Code (1974, 1980 Repl.Vol.) § 2-309 (c) (4) of the Cts. & Jud.Proc.Art.; serve summonses for witnesses or records required by county officials, collect and record all fees and charges in civil and criminal cases. Anne Arundel County Code (1974) § 1-100; (1969) § 5-1100.

II. Baltimore City
    A. Police officers — safeguard lives and property, preserve public peace, detect and prevent crime, enforce the laws, apprehend and arrest criminals, preserve order in public places. Baltimore City Code of Public Local Laws (1980) § 16-2 (a).
    B. Sheriff and deputy sheriffs — serve summonses for jurors, provide courthouse security, arrest persons damaging, disturbing or interfering with the court, return witness subpoenas. Baltimore City Code of Public Local Laws (1980) § 7-6, §§ 22-6 through 22-9, § 22-45.

III. Baltimore County
    A. Police officers — preserve public peace, prevent crime, protect persons and property, enforce laws, arrest criminals, serve and execute writs, subpoenas, and commitments in civil and criminal cases. Baltimore County Code (1978) §§ 24-3, 24-4.
    B. Sheriff and deputy sheriffs — collect and report fines and forfeitures. Baltimore County Code (1978) §§ 7-58, 7-59; administer and operate the jail. Baltimore County Code (1978, 1981 Cum.Supp.) §§ 7-107, 7-108.

IV. Howard County
    A. Police officers — preserve public peace, prevent crime, protect persons and property, arrest and transport

Because in counties that have established police depart-
ments, the functions ordinarily performed by deputy sheriffs
as a primary part of their daily activities are dissimilar from
those primarily performed by police officers and do not
involve unusual hazards, stresses, and strains, deputy
sheriffs in such counties are not encompassed in the term
"police officer" contained in Art. 101, § 64A (a). They are
not, therefore, to be accorded a presumption of compensable
occupational disease. To hold otherwise would be to stretch
statutory language and legislative intent beyond the fair
implication of the words and purpose of Art. 101, § 64A (a).
Accordingly, we shall affirm the judgment of the trial court.

> *Judgment of the Circuit Court for*
> *Montgomery County affirmed.*
> *Costs to be paid by petitioner.*

criminals. Howard County Charter § 1109 (b)
(1982) & Howard County Code (1982) § 17.200.
B. Sheriff and deputy sheriffs — transport prisoners to a
place of detention. Howard County Code (1982)
§ 17.202.

V. Prince George's County

A. Police officers — protect life and property, preserve peace
and order, prevent crime, arrest criminals, enforce
the law, serve all summonses. Prince George's
County Code (1979, 1981 Supp.) § 18-135 (a).

B. Sheriff and deputy sheriffs — arrest criminals, serve pro-
cess, provide court security, supervise and transport prisoners
— cannot conduct criminal investigations except in matters
concerning the sheriff's department or upon request of the
courts. Md. Code (1974, 1980 Repl. Vol., 1981 Cum.Supp.)
§ 2-309 (r) (8) of the Cts.& Jud.Proc.Art.; maintain an office in
the courthouse, give bond, advertise sales of land and
tenements. Prince George's County Code (1979, 1981 Supp.)
§§ 18-103, 18-104, 18-106.