569 A.2d 649

**HARFORD COUNTY, Maryland**

**v.**

**UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION et al.**

No. 57, Sept. Term, 1989.

Court of Appeals of Maryland.

Feb. 9, 1990.

Victor K. Butanis, County Atty., and Jacqueline A. Moore, Asst. County Atty., both on brief, Bel Air, for appellant.

Jane A. Canter (Charles E. Chlan, Charles E. Chlan & Assoc., all on brief), Baltimore, Harold Douglas Norton

(Brown, Brown & Brown, P.A., both on brief), Bel Air, for appellees.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, JJ., and ROBERT L. KARWACKI, Judge of the Court of Special Appeals of Maryland, Specially Assigned.

ROBERT L. KARWACKI, Judge, Specially Assigned.

The issue presented by this appeal is whether Harford County is responsible for the cost of furnishing medical care to an indigent person who was injured while resisting arrest by police officers of the Town of Aberdeen. The undisputed material facts under which the question arises are these.

On April 8, 1985, police officers of the Town of Aberdeen (Aberdeen), a municipal corporation, attempted to arrest James T. Thompson who was suspected of having raped a woman in Harford County. Thompson resisted arrest and engaged the officers in a gun battle. Thompson was severely wounded.

While Thompson was being treated at the scene by the crew of an ambulance which had been summoned, it was decided to take Thompson to the Shock Trauma Center at the University of Maryland Hospital in Baltimore. A Maryland State Police Medevac helicopter transported him to the hospital. He was an in patient at that hospital until April 29, 1985.

From the time of his admission to the hospital until April 15, Thompson was guarded by officers of the Aberdeen Police Department. From April 16 until his discharge, members of the Office of the Sheriff of Harford County joined the Aberdeen officers in maintaining that guard.

Immediately following Thompson's arrest on April 8, members of the office of the Sheriff of Harford County began their investigation of the circumstances of that arrest. Subsequently, a warrant was issued for Thompson's arrest by a commissioner of the District Court of Maryland

for Harford County. That warrant charged him, *inter alia,* with assaults upon the Aberdeen police officers on April 8, 1985, with intent to murder them, punishable as felonies by Md.Code (1957, 1982 Repl.Vol.), Article 27, § 12. That warrant was executed by the sheriff's office on April 25, 1985. Thompson was presented to a District Court commissioner the same day. The commissioner ordered that he be held for trial without bail and committed him to the custody of the sheriff. Thompson was returned to University Hospital until he was discharged on April 29, 1985.

The sheriff acknowledged his responsibility for the medical expenses incurred at University Hospital by Thompson, who was indigent, from April 25 through April 29. He denied liability for the cost of Thompson's care from April 8 through April 24.

University of Maryland Medical System Corporation (University), one of the appellees, operates University Hospital. On April 22, 1986, it brought suit in the Circuit Court for Harford County against Harford County, its Sheriff and the Town Commissioners of Aberdeen to recover the unpaid amount of Thompson's bill. On January 18, 1989, the court entered summary judgment in favor of University against Harford County and Thompson, jointly and severally, in the amount of $39,681.54. The court dismissed the case against the remaining defendants. Harford County filed an appeal to the Court of Special Appeals. We issued the writ of certiorari prior to consideration of the appeal by the intermediate appellate court.

Appellant contends that it was not responsible for the medical expenses of Thompson until he was committed to the custody of the sheriff by the District Court commissioner on April 25, 1985. We disagree.

Article IV, § 44 of our Constitution provides in pertinent part:

There shall be elected in each county and in Baltimore City one person, resident in said county or City, above the age of twenty-five years, and for at least five years

preceding his election a citizen of the State, to the office of Sheriff. He shall hold office for four years, until his successor is duly elected and qualified, give such bond, exercise such powers and perform such duties as now are or may hereafter be fixed by law.

The earlier constitutions adopted by our citizens since 1776 similarly have provided for the elective office of sheriff. *Rucker v. Harford County,* 316 Md. 275, 285, 558 A.2d 399, 404 (1989). Although the sheriff is a state rather than a county official, the expenses of the sheriff's office are substantially funded by the county which the sheriff serves. *Id.* 316 Md. at 281–82, 558 A.2d at 402; Md.Code (1974, 1984 Repl.Vol.) § 2–309 of the Courts and Judicial Proceedings Article. The Constitution does not specify the powers and duties of the sheriff. His duties are those that exist at common law, except as modified by statute. *Soper v. Montgomery County,* 294 Md. 331, 337, 449 A.2d 1158, 1161 (1982); Comment, *The Maryland Sheriff v. Modern and Efficient Administration of Justice,* 2 U.Balt.L.Rev. 282, 287–88 (1973).

One of the principal duties of the sheriff at common law was to act as the jailor of the shire or county in which he served. As such, the sheriff was the custodian of all persons arrested and charged with a criminal offense pending their trial before the court having jurisdiction over them. *Bowie v. Evening News Co.,* 151 Md. 285, 297, 134 A. 214 (1926); *Cocking v. Wade,* 87 Md. 529, 539, 40 A. 104 (1898); *Anderson on Sheriffs, Coroners, Constables,* § 263 at 269 (1941); *Murfree on Sheriffs,* § 1160 at 628–29 (1890). This common law duty is retained by the sheriff unless expressly removed or modified by the Legislature. *Soper v. Montgomery County,* 294 Md. at 337, 449 A.2d at 1161 (1982); *Beasley v. Ridout,* 94 Md. 641, 655–57, 52 A. 61, 64–65 (1902); *Mayor of Baltimore v. State,* 15 Md. 376, 488 (1860).

The General Assembly has codified this common law duty of the sheriff. Md.Code (1957, 1979 Repl.Vol.), Art. 87, § 45 provides:

The sheriff shall keep safely all persons committed to his custody by lawful authority until such persons are discharged by due course of law.

Md.Code (1957, 1979 Repl.Vol.) Article 87, § 46[1] states:

He [the sheriff] shall provide food and board for all prisoners committed to his charge and such food and other articles for the comfort of sick prisoners as the physician attending such prisoners may deem necessary, the expense of which shall be paid by the county or Baltimore City.

The cardinal rule of statutory construction is to ascertain and effectuate legislative intent. *Jones v. State*, 311 Md. 398, 405, 535 A.2d 471, 474 (1988). In doing this, the words of the statute are to be given their ordinary and natural import, *NCR Corp. v. Comptroller of the Treasury*, 313 Md. 118, 124, 544 A.2d 764, 767 (1988), since the language of the statute is the primary source for determining the legislative intent. *State v. Fabritz*, 276 Md. 416, 421, 348 A.2d 275 (1989). But that plain-meaning rule is not absolute. One equally well settled principle is that a statute is to be construed reasonably with reference to the purpose, aim or policy of the legislature reflected in that statute. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 632 (1987). Additionally, a statute must be construed in context, because the meaning of the "plainest language may be governed by the context in which it appears." *NCR Corp.*, 313 Md. at 125, 544 A.2d at 767. Among those contexts may be the statutory scheme in which the language appears, *Jones*, 311 Md. at 405, 535 A.2d at 474–75, or the principles of the common law, *Gray v. State*, 43 Md.App. 238, 242–43, 403 A.2d 853, 856 (1979). In any event, "results that are unreasonable, illogical or inconsist-

---

**1.** This statute was amended by Chapter 628 of the Acts of 1987, effective July 1, 1987, and by Chapter 591 of the Acts of 1988, effective July 1, 1988. The substance of the statute applicable to the instant case now appears as subsection (b) of the statute. Md.Code (1957, 1985 Repl.Vol., 1989 Cum.Supp.), Article 87, § 46. The amendments are not relevant to the issue we resolve herein.

ent with common sense should be avoided." *Potter v. Bethesda Fire Dept.*, 309 Md. 347, 353, 524 A.2d 61, 64 (1987). Applying these guidelines, we hold that the sheriff's duty to provide medical care under Article 87, § 46 is broad enough to require that appellant bear the cost of treatment which Thompson received at University Hospital.

In the instant case the sheriff of Harford County was the designated custodian of persons who were arrested and charged with a crime prior to trial. Had Thompson not required medical care at the time of his arrest, he would have been presented to a judicial officer of the District Court "without unnecessary delay and in no event later than 24 hours after arrest." Md.Rule 4–212(f)(1). If he was to be incarcerated prior to his trial, the expense of that incarceration, including the cost of any required medical treatment, would be borne by appellant. The fact that the injuries he sustained in that arrest necessitated his hospitalization should not defeat the legislative intention that the cost of his pre-trial incarceration should be borne by appellant. It has long been settled that the sheriff, when circumstances dictate, may maintain custody of his prisoner in some place other than the county jail. *Cocking v. Wade, supra.*

The Attorney General has furnished the Sheriff of Calvert County with an opinion which is in accord with our holding herein. 58 Op.Atty.Gen. 647 (1973). He there advised the sheriff that he could not refuse to accept custody of injured, sick or intoxicated prisoners who were in need of hospital care after their arrest by the State Police or municipal police and that the cost of that care must be borne by the county.[2]

---

**2.** The courts of some of our sister states have resolved disputes between county and municipal governments over which should bear the cost of medical care for an injured arrestee. Some of these courts have placed the responsibility for furnishing medical care on the government whose law was violated by the arrestee. *See. e.g. Wesley Medical Center v. City of Wichita,* 237 Kan. 807, 703 P.2d 818 (1985); *L.P. Medical Specialists v. St. Louis County,* 379 N.W.2d 104 (Minn.

JUDGMENT AFFIRMED;
COSTS TO BE PAID BY THE APPELLANT.

App.1985); *Washington Township Hosp. Dist. v. County of Alameda,* 263 Cal.App.2d 272, 69 Cal.Rptr. 442 (1968); *St. Mary's Hosp. v. Saginaw, County,* 363 N.W.2d 32 (1984). Other courts have rejected that test and placed the responsibility upon the government whose officers were in physical control of the prisoner when the need for medical care arose. *See, e.g. Cayahoga County Hosp. v. City of Cleveland,* 15 Ohio App.3d 70, 472 N.E.2d 757 (1984). Still others have implied custody by the county authority notwithstanding physical custody of the prisoner by municipal police officers. *See. e.g. St. Mary of Nazareth Hosp. v. City of Chicago,* 29 Ill.App.3d 511, 331 N.E.2d 142 (1975); *Oregon State Bd. of Higher Educ. Washington County,* 52 Or.App. 369, 629 P.2d 373 (1981), *cert. denied,* 291 Or. 368, 634 P.2d 1347 (1981). These courts have dealt with the issue, however, by construing significantly different statutes governing the duty of pretrial detention of the arrestee and, consequently, do not provide us with persuasive guidance.