Thornton Mellon LLC, et al. v. Frederick County Sheriff, et al., No. 51, September Term, 2021

**TAX SALE FORECLOSURE CASES – WRITS OF POSSESSION – EXPRESS AND IMPLIED POWERS OF SHERIFFS –** Court of Appeals held that sheriffs did not exceed express or implied authority in adopting policies on how to serve writs of possession in tax sale foreclosure cases and that, in execution of writs of possession, sheriffs' mover policy and weather policy are valid exercise of powers fairly implied by sheriffs' expressly given duties and authority.

Circuit Court for Frederick County
Case No. C-10-CV-18-000976

Circuit Court for Baltimore County
Case No. 03-C-18-011990

Circuit Court for Anne Arundel County
Case No. C-02-CV-19-002613

Circuit Court for Howard County
Case No. C-13-CV-19-001149

Argued: June 1, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 51

September Term, 2021

_____

THORNTON MELLON LLC, ET AL.

v.

FREDERICK COUNTY SHERIFF, ET AL.

_____

Watts
Hotten
Booth
Biran
Eaves
McDonald, Robert N. (Senior
Judge, Specially Assigned)
Getty, Joseph M. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Watts, J.

_____

Filed: July 12, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In this case, tax sale buyers brought actions for declaratory and injunctive relief in circuit courts, alleging that sheriffs in Maryland exceeded their express and implied authority by adopting policies concerning how to execute writs of possession in tax sale foreclosure cases. The case involves a challenge to two policies used by sheriffs in evicting people from their homes when a tax sale buyer obtains a judgment foreclosing the right of redemption with respect to a property and the homeowner does not redeem the property. Under the first policy ("the mover policy"), when serving writs of possession, sheriffs require tax sale buyers to provide movers to remove personal property from the premises at issue. Under the second policy ("the weather policy"), during bad weather conditions, sheriffs postpone the service of writs of possession.[1] We must determine whether the two policies followed by sheriffs for the execution of writs of possession constitute a valid exercise of powers fairly implied by the sheriffs' expressly given authority.

The power of a government official or agency to do something can be either express or implied. An express power is "[a] power explicitly granted by a legal instrument." *Express Power*, Black's Law Dictionary (11th ed. 2019). By contrast, an implied power is a "power that is not enumerated but that nonetheless exists because it is needed to carry out an express power." *Implied Power*, Black's Law Dictionary (11th ed. 2019). "Generally, [] a government official or agency has reasonable discretion to carry out fairly

---

[1]This case also involved a third policy ("the sixty-day policy") under which sheriffs did not serve writs of possession that were more than sixty days old. The Court of Special Appeals determined that the sixty-day policy was invalid because it exceeded the sheriffs' fairly implied powers. See Thornton Mellon, LLC v. Frederick Cnty. Sheriff, 252 Md. App. 320, 339, 258 A.3d 1032, 1043-44 (2021). No sheriff petitioned or cross-petitioned for a writ of *certiorari* seeking our review of the holding.

implied powers incident to those duties or authority expressly granted." Town of La Plata v. Faison-Rosewick LLC, 434 Md. 496, 523, 76 A.3d 1001, 1017 (2013) (cleaned up).

In the Circuit Courts for Anne Arundel, Baltimore, Frederick, and Howard Counties, one or all of Thornton Mellon LLC, Ty Webb LLC, Danny Noonan LLC, and Al Czervik LLC (together, "Thornton Mellon"), Petitioners,[2] tax sale buyers, sued the sheriffs of those jurisdictions (together, "the Sheriffs"), Respondents, seeking declaratory judgment that the Sheriffs' mover policy and weather policy were void and injunctions against enforcement of the policies.[3]  In Baltimore and Frederick Counties, Thornton Mellon LLC, which describes itself in the complaints as "a large institutional tax sale buyer," was the only plaintiff.  In Anne Arundel County, all of the entities were plaintiffs and in the complaint, Ty Webb LLC, Danny Noonan LLC, and Al Czervik LLC are described as entities to which

---

[2]In their opinions, the Circuit Court for Baltimore County and the Court of Special Appeals observed that Petitioners were evidently named after characters in the popular 1980s movies *Back to School* and *Caddyshack*.  See Thornton Mellon, LLC, 252 Md. App. at 326 n.3, 258 A.3d at 1036 n.3.  IMDb (an abbreviation of "Internet Movie Database") describes Thornton Melon—the main character of *Back to School*—as "a fun[-]loving and obnoxious rich businessman[.]"  IMDb, *Back to School*, https://www.imdb.com/title/ tt0090685/ [https://perma.cc/A548-UUFF].  IMDb describes Ty Webb, Danny Noonan, and Al Czervik—characters in *Caddyshack*—as a "suave golf guru[,]" a "young caddie[,]" and a "distasteful, filthy rich construction magnate," respectively.  IMDb, *Caddyshack*, https://www.imdb.com/title/tt0080487/ [https://perma.cc/NDD3-4AUD].  As the Court of Special Appeals stated: "Thornton Mellon is [] entitled to name its entities howsoever it wishes."  Thornton Mellon, LLC, 252 Md. App. at 326 n.3, 258 A.3d at 1036 n.3.  These are the names under which Thornton Mellon has chosen to engage in the tax sale foreclosure business.

[3]In addition, in the Circuit Court for Montgomery County, Al Czervik LLC filed a substantively identical complaint against the Montgomery County Sheriff.  See Al Czervik LLC v. Montgomery Cnty. Sheriff, No. 475730-V (Cir. Ct. Montgomery Cnty.).  The circuit court stayed the case pending the resolution of this one.

Thornton Mellon LLC "regularly assigns Judgments Foreclosing Rights of Redemption and tax sale certificates." In Howard County, Al Czervik LLC was the only plaintiff.

In each case, the circuit court concluded that the mover policy and the weather policy are valid and enforceable. Thornton Mellon appealed, and the Court of Special Appeals agreed with the conclusions of the circuit courts. Thornton Mellon filed a petition for a writ of *certiorari*, which we granted.

We hold that the Sheriffs have the implied authority to adopt policies for how to serve writs of possession in tax sale foreclosure cases and that, in the execution of writs of possession, both the mover policy and the weather policy constitute a valid exercise of powers fairly implied by the Sheriffs' expressly given duties and authority.

## BACKGROUND

### Complaints and Motions to Dismiss

As explained above, in the Circuit Courts for Anne Arundel, Baltimore, Frederick, and Howard Counties, Thornton Mellon filed complaints against each of the Sheriffs, seeking declaratory judgment and injunctive relief. In each complaint, Thornton Mellon alleged that the Sheriffs lacked a legal basis for adopting the mover and weather policies and that the policies should be declared void and unenforceable. Thornton Mellon characterized the mover policy as a practice of requiring it to bring movers when the Sheriffs served writs of possession and characterized the weather policy as a practice of the Sheriffs refusing to serve writs of possession during certain months of the year when the weather is bad. Thornton Mellon alleged that the mover policy improperly caused it to incur additional costs and was not uniformly applied in all jurisdictions or with respect to

all plaintiffs who obtained writs of possession. Thornton Mellon alleged that the weather policy infringed on its right to prompt enforcement of writs of possession. Thornton Mellon contended that neither the mover policy nor the weather policy is codified in any statute, and that both policies are unconstitutional.

The Sheriffs moved to dismiss the complaints and alternatively moved for summary judgment. The Sheriffs pointed out that the mover policy exists because a tax sale buyer is entitled only to possession of the real property on which there is a tax lien and not to any personal property that may be on the premises. The Sheriffs contended that the mover requirement is part of a "Statewide policy and practice of Maryland sheriffs that prevents the unlawful conversion[4] of personal property" in the service of writs of possession for real property. The Sheriffs argued that not following the mover policy would, in most jurisdictions, result in them engaging in conversion of residents' personal property.[5]

With respect to the weather policy, the Sheriffs contended that they have an unwritten policy to postpone the service of writs of possession in extreme weather

---

[4]Conversion is "an act or series of acts of willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right, whereby that other person is deprived of the use and possession of the property." *Conversion*, Black's Law Dictionary (11th ed. 2019).

[5]Unlike other jurisdictions, Baltimore City and Prince George's County have ordinances that address the issue of personal property left on a foreclosed or leased property when the resident or tenant is subject to eviction. Balt. City Code, Art. 13, § 8B-4(a) states that "[a]ll personal property in or about [a] foreclosed property at the time that [a] writ of possession is executed is abandoned." Prince George's Cnty. Code, § 13-164(a) concerns service of warrants of restitution and states in pertinent part that "the landlord shall dispose of the property of a tenant. In no event may any of the tenant's property be placed on a public right-of-way or on any public property. Any property removed from the leased premises pursuant to a properly issued warrant of restitution shall be deemed abandoned."

conditions because of the need for consistency in the service of writs of possession and warrants of restitution[6] and that to do otherwise and evict people during bad weather would be "inhumane, dangerous, and/or impractical." The Sheriffs argue that the weather policy is valid and that they do not need express legal authorization to employ a policy of serving writs of possession in the same manner as warrants of restitution, the service of which can be stayed in the event of extreme weather conditions under Md. Code Ann., Real Prop. (1974, 2015 Repl. Vol.) ("RP") § 8-401(f)(2)(I).[7] The Sheriffs maintain that evicting residents without using the weather policy "would put vulnerable people at potentially life-threatening risk" "who may not have immediate access to warm and dry shelter" during extreme weather conditions. The Sheriffs contended that in seeking to have the weather policy declared invalid, Thornton Mellon asked the circuit courts to uphold the "uncompassionate and inhumane treatment of Maryland citizens during the eviction

_____

[6]A warrant of restitution—also known as a writ of restitution—is a warrant or writ issued to "enforc[e] a civil judgment in a forcible-entry-and-detainer action[.]" *Writ of Restitution*, Black's Law Dictionary (11th ed. 2019). A forcible-entry-and-detainer action is "[a] quick and simple legal proceeding for regaining possession of real property from someone who has wrongfully taken, or refused to surrender, possession." *Forcible Entry and Detainer*, Black's Law Dictionary (11th ed. 2019). An ejectment action is an example of a forcible-entry-and-detainer action. See id.

A distinction between a writ of possession and a warrant of restitution is the type of plaintiff involved. As its name suggests, a warrant of restitution is a method for possession of property to be restored to a landlord. See Md. Code Ann., Real Prop. (1974, 2015 Repl. Vol.) ("RP") § 8-216(b)(2)(i). By contrast, a writ of possession is a method for possession of property to be transferred to a party who typically never possessed it in the first place, such as a ground lease holder, see RP § 8-807(i), a mortgage foreclosure sale buyer, see RP § 7-105.11(d)(1), or a tax sale buyer, see Md. Code Ann., Tax-Prop. (1986, 2019 Repl. Vol.) § 14-850.

[7]At the time of the filing of the motions to dismiss, what is now RP § 8-401(f) was RP § 8-401(d).

process."

Thornton Mellon filed oppositions to the motions to dismiss, contending that the motions should be treated as requests for summary judgment because they referred to facts outside of the complaints. Thornton Mellon argued that summary judgment was inappropriate because there were disputes of material fact as to, among other things, the specifics of the mover policy, and that no law authorized the Sheriffs to adopt the mover policy or the weather policy.[8]

The Circuit Courts for Anne Arundel, Baltimore, and Frederick Counties conducted hearings. The Circuit Courts for Anne Arundel and Frederick Counties issued opinions granting summary judgment in the Sheriffs' favor, declaring that the mover policy and the weather policy were valid and enforceable, and denying the relief sought by Thornton Mellon. The Circuit Court for Howard County reached the same conclusion and issued an order adopting the reasoning of the opinion issued by the Circuit Court for Frederick County. The Circuit Court for Baltimore County issued a Decision and Order declaring that the mover policy and the weather policy were valid and enforceable and denying the request for relief. Thornton Mellon filed notices of appeal.

**Affidavits**

In the circuit courts, the Sheriffs attached to each motion to dismiss an affidavit in

---

[8]In Baltimore and Frederick Counties, the Sheriffs filed supplements to the motions to dismiss. Thornton Mellon filed oppositions to the supplements, arguing, among other things, that the Sheriffs exceeded their authority by adopting the mover policy and the weather policy. In addition, in Anne Arundel and Frederick Counties, Thornton Mellon filed supplements to the oppositions to the motions to dismiss. The Anne Arundel County Sheriff filed a response to the supplement.

which Brian Andre, the Acting Lieutenant for the Anne Arundel County Sheriff, described the mover policy and a second affidavit in which Acting Lieutenant Andre or another officer serving under a Sheriff described the weather policy in the officer's jurisdiction. With respect to the weather policy, the Sheriff in Frederick County submitted the affidavit of Adam Gregory, a sergeant of the Frederick County Sheriff. In Baltimore County, Deputy Chief Ruby Hernandez submitted an affidavit. The Howard County Sheriff relied on Acting Lieutenant Andre's affidavits concerning both the mover and weather policies.

All of the officers' affidavits indicate that the Sheriffs serve warrants of restitution and writs of possession in the same manner. In other words, the affidavits state that the Sheriffs follow the same procedures when performing evictions[9] to secure possession of real property for both landlords (who are plaintiffs in landlord-tenant cases) and tax sale buyers (who are plaintiffs in tax sale foreclosure cases).

**Affidavit Describing the Mover Policy**

In his affidavit describing the mover policy, Acting Lieutenant Andre stated that over the previous eight months, problems had arisen with writs of possession sought by Thornton Mellon. Acting Lieutenant Andre described the problems as including that writs of possession are typically issued by the Clerk but that in the preceding eight months Thornton Mellon had requested that judges issue writs of possession which did not

---

[9]Although the terms "evict" and "eviction" are most often used in landlord-tenant cases, they are not specific to such cases. To evict is "[t]o expel (a person, esp[ecially] a tenant), from real property, usu[ally] by legal process." *Evict*, Black's Law Dictionary (11th ed. 2019). An eviction is "[t]he act or process of legally dispossessing a person of land or rental property." *Eviction*, Black's Law Dictionary (11th ed. 2019).

resemble in substance writs issued by the Clerk. Acting Lieutenant Andre averred that the writs recently authored by Thornton Mellon would include taking possession of personal property as well as real property, whereas the writs issued by the Clerk did not include taking possession of personal property. Acting Lieutenant Andre averred that the Thornton Mellon writs relieved Thornton Mellon of the requirement of providing movers to remove personal property during the service of writs of possession, making it impossible for the Sheriff to serve a writ of possession without transferring someone's personal property to Thornton Mellon. Acting Lieutenant Andre stated that he believed that the judges who had signed this type of writ of possession were not aware of the key differences.

Acting Lieutenant Andre provided a link to a webpage on the website of Anne Arundel County summarizing the Sheriff's policy and practice of requiring movers to remove personal property during the service of writs of possession and warrants of restitution. See Anne Arundel Cnty., Md., *Landlord - Tenant Matters* (2020), https://www.aacounty.org/services-and-programs/landlord---tenant-matters [https://perma.cc/2JKN-GBGL] ("the Anne Arundel County Webpage"). According to the Anne Arundel County Webpage—a printout of which was attached to Acting Lieutenant Andre's affidavit—"[a] landlord is responsible for providing an adequate number of movers and exercising reasonable care in removing a tenant's property from a location. Under most circumstances, if a landlord has failed to provide enough movers to conclude an eviction within 2 hours, the eviction will be rescheduled." The Anne Arundel County Webpage also states that "[a]ll personal property except that which may pose a public safety threat is to be placed on the curb of the nearest public roadway and once there it is the tenant's

responsibility to safeguard the property." According to the Anne Arundel County Webpage, "failure to remove a tenant's evicted property from a County right-of-way within 48 hours will result in removal by the County Department of Public Works."[10]

Acting Lieutenant Andre averred that, before setting the number of movers required for serving a writ, deputies visit the premises to assess its size, its proximity to the nearest public road, and the amount of personal property there. The Sheriff does not require a plaintiff to provide movers where there is no personal property on the premises or the only personal property on the premises is trash. In other words, the Sheriff requires a plaintiff to provide movers where there is personal property on the premises that is not trash. To determine how many movers are needed, the Sheriff uses a formula and criteria similar to that developed by the Montgomery County Sheriff. Acting Lieutenant Andre provided a link to a webpage on the website of Montgomery County that contains the formula and criteria. See Montgomery Cnty. Gov't, *Eviction Section* (2022), https://www. montgomerycountymd.gov/sheriff/sections/eviction-section.html [https://perma.cc/5G8J-W33T] ("the Montgomery County Webpage").

According to the Montgomery County Webpage—a printout of which was attached to Acting Lieutenant Andre's affidavit—a landlord must provide:

---

[10]The Anne Arundel County Webpage observes that this is pursuant to Anne Arundel Cnty. Code ("AACC") § 13-1-106. AACC § 13-1-106(a) states that "[a]n owner of rental real property may not dispose of, store, or abandon the personal property of an evicted tenant on County rights-of-way, easements, or other County property for more than 48 hours after the date of the eviction." AACC § 13-1-106(b) states in pertinent part that "[t]he Department may remove and dispose of all personal property that is on County property in violation of this section, and the Department shall bill the owner of the rental real property for all costs incurred by the County[.]"

- A moving crew of at least:
- 8 persons for a 1-2 bedroom apartment
- 10 persons for a 3 bedroom apartment
- 10-12 persons for a townhouse
- 12-15 persons for a single family home
- 15-25 persons for a retail business
- and any necessary moving equipment.  More people may be required depending on the size and nature of the property.
- A person who can defeat the locks may be needed in order to gain entry.
- A truck or means to get tenant's personal property to the nearest public right of way.
- Tools in case something has to be disassembled before it can be removed.
- Plastic bags for clothing and other small items.

The Montgomery County Webpage also states that "[u]navailability of sufficient or timely resources may result in the eviction being canceled."  (Emphasis omitted).

Acting Lieutenant Andre averred that, to the best of his knowledge and belief, the Sheriff's mover policy in Anne Arundel County is the Statewide policy and practice of all sheriffs in Maryland, with some slight variations.  Acting Lieutenant Andre averred that the purpose of the mover policy is to avoid transferring residents' personal property to plaintiffs, *i.e.*, tax sale buyers, without any legal authority for doing so.

### Affidavits Describing the Weather Policy

Acting Lieutenant Andre's affidavit describing the weather policy[11] and the affidavit by Sergeant Gregory, an officer with the Frederick County Sheriff's Office, stated that the Sheriffs of those jurisdictions do not serve writs of possession or warrants of

---

[11]As explained above, Acting Lieutenant Andre's affidavit describing the weather policy in Anne Arundel County was attached to the memorandum in support of the motion to dismiss filed in Howard County.

restitution during extreme weather conditions. Similarly, Deputy Chief Hernandez averred that the Sheriff in Baltimore County has a practice of not serving writs of possession or warrants of restitution when Baltimore County courthouses and other Baltimore County government buildings are closed due to inclement weather.

All three officers' affidavits stated that, in an instance of extreme or inclement weather, the Sheriff will serve a warrant of restitution or writ of possession "as soon as weather conditions improve." All three officers' affidavits also stated that "[t]he Sheriff does not generally refuse to serve writs during months when the weather is poor." In other words, the officers denied that their offices refuse to serve writs during certain months.[12] Acting Lieutenant Andre averred that the Anne Arundel County Sheriff follows the weather policy in that jurisdiction "for reasons relating to compassion, community relations, and practicality." Similarly, Sergeant Gregory averred that the Frederick County Sheriff follows the weather policy in that jurisdiction "for reasons relating to human welfare, community relations, and practicality." Acting Lieutenant Andre, Sergeant

---

[12]Serving as another example of a weather policy, the Montgomery County Webpage describes its policy as follows:

> If it is raining or snowing at the scheduled time of the eviction, the eviction will not proceed. However, if precipitation starts after an eviction has started, the eviction will continue until completion. I[f] the predicted high temperature from the national weather broadcast on the scheduled eviction date is 32 degrees or lower, evictions for that day will be canceled. . . . If an eviction is canceled as a result of bad weather it will be rescheduled as soon as possible.

In this case, the three officers' affidavits describing the weather policy did not mention the Montgomery County Webpage. The information concerning the Montgomery County Webpage is included as an example of the weather policy used by the Sheriff in that county.

- 11 -

Gregory, and Deputy Chief Hernandez each averred that to their knowledge the Sheriff in their jurisdiction never had a dispute with Thornton Mellon over the weather policy.

## Opinion of the Court of Special Appeals

The Court of Special Appeals granted a motion by the Sheriffs to consolidate the four appeals, affirmed each circuit court's grant of judgment as to the mover and weather policies, and remanded the cases to the circuit courts with instructions to issue declarations consistent with the opinion.[13]  See Thornton Mellon, LLC v. Frederick Cnty. Sheriff, 252 Md. App. 320, 339-40, 258 A.3d 1032, 1044 (2021).  The Court of Special Appeals held that sheriffs have powers fairly implied by their express powers and duties and that the mover and weather policies are valid exercises of such fairly implied powers.  See id. at 339, 258 A.3d at 1044.  The Court of Special Appeals determined that neither the mover policy nor the weather policy was inconsistent with the Sheriffs' duty under Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol.) ("CJ") § 2-301(a) to serve a writ of possession according to its instructions within the time set by the trial court.  See id. at 334-35, 258 A.3d at 1041-42.  The Court of Special Appeals explained that there was no reason not to conclude that, like all other public officials, sheriffs have powers fairly implied by their express powers and duties.  See id. at 332-33, 258 A.3d at 1039-40.

Addressing the mover policy, the Court of Special Appeals concluded that it was

---

[13]As discussed above, the Court of Special Appeals reversed each circuit court's determination as to the validity of a policy under which the Sheriffs did not serve writs of possession more than sixty days old.  The Court of Special Appeals explained that because a writ of possession issued to a tax sale buyer does not expire, the sixty-day policy as applied to writs of possession was inconsistent with Maryland law.

not arbitrary or capricious for the Sheriffs to choose to serve writs of possession in tax sale foreclosure cases in the same way that sheriffs are required to serve writs of restitution in landlord-tenant cases, where, under what is now RP § 8-401(f)(1)(i), a sheriff must require a landlord to have personal property removed from the premises. See id. at 334-35 & n.12, 258 A.3d at 1041 & n.12. The Court of Special Appeals disagreed with Thornton Mellon's argument that the mover policy is inconsistent with the tax sale foreclosure process because it increases Thornton Mellon's costs and discourages tax sale buyers from participating in the foreclosure process. See id. at 335, 258 A.3d at 1041. The Court of Special Appeals explained that the mover policy does not stop the tax sale foreclosure process from proceeding and that the record did not establish that the costs of the mover policy are a disincentive for would-be tax sale buyers. See id. at 335, 258 A.3d at 1041.

Addressing the weather policy, the Court of Special Appeals pointed out that, under what is now RP § 8-401(f)(2)(i), service of a warrant of restitution may be stayed due to extreme weather conditions. See id. at 336-37 & n.15, 258 A.3d at 1042 & n.15. The Court of Special Appeals agreed with the Sheriffs that refraining from following the weather policy in connection with writs of possession would be inhumane, dangerous, and impractical. See id. at 337, 258 A.3d at 1042.

The Court of Special Appeals was unpersuaded by Thornton Mellon's assertion that summary judgment was unwarranted because of factual disputes concerning the mover policy and the weather policy. See id. at 336-37, 258 A.3d at 1042-43. The Court of Special Appeals determined that there was no need for an affidavit concerning the mover policy in each jurisdiction because Thornton Mellon did not allege that the policy

substantively varied by jurisdiction. See id. at 336, 258 A.3d at 1042. The Court of Special Appeals concluded that Thornton Mellon's assertions concerning the weather policy pertained only to the language used to describe the policy and did not rise to the level of a genuine dispute of material fact. See id. at 337, 258 A.3d at 1042.

**Petition for a Writ of *Certiorari***

Thornton Mellon petitioned for a writ of *certiorari*, raising the following four issues:

1. Whether Sheriffs who are commanded to enforce writs of possession issued in a tax sale proceeding have the authority to impose on tax sale purchasers an arbitrary "Mover Policy," which is not authorized by the Legislature, is unduly burdensome on tax sale purchasers, and does no more to accomplish the purported goal of the policy than substantially less burdensome options, including those which have been enacted by local governments?

2. Whether Sheriffs who are commanded to enforce writs of possession issued in tax sale proceedings have the authority to impose on tax sale purchasers an undefined "Weather Policy," which is not authorized by the Legislature and substantially burdens tax sale purchasers who are subject to the whims of the Sheriffs and their deputies executing their writs?

3. Where the Legislature has codified statutes governing the eviction process in tax sale proceedings, do the Sheriffs have the "fairly-implied power" to enact their own unwritten policies concerning the eviction process, which are not authorized by nor consistent with the policies set forth by the Legislature, and then rely upon those unwritten policies as a basis to abdicate their statutory obligation to enforce writs of possession?

4. Did the [Court of Special Appeals] err in holding that there was no genuine dispute of material fact regarding the content of the Sheriffs' Policies?

We granted the petition. See Thornton Mellon LLC v. Frederick Cnty. Sheriff, 476 Md. 585, 264 A.3d 1283 (2021).

- 14 -

## DISCUSSION[14]

### The Parties' Contentions

Thornton Mellon contends that the Court of Special Appeals erred in holding that the Sheriffs have the fairly implied power to adopt mover and weather policies. Thornton Mellon argues that a sheriff's role in serving process is a ministerial duty as to which they have almost no discretion, and that the Sheriffs in this case lacked the ability to adopt the mover policy and the weather policy, which it characterizes as arbitrary and unauthorized by case law or statute. Thornton Mellon asserts that this is demonstrated by CJ § 2-301(a), which provides that a "sheriff shall serve all papers directed to him according to their instructions, within the time set by the court." Thornton Mellon contends that the plain language and legislative history of RP § 8-401, which addresses the execution of warrants of restitution in extreme weather and the removal of a tenant's personal property, demonstrates that the statute applies only to the service of warrants of restitution in landlord-tenant cases, not to writs of possession in tax sale foreclosure cases. Thornton Mellon argues that RP § 8-401 does not provide a basis for either the mover policy or the weather policy.

Likewise, Thornton Mellon contends that nothing in Maryland Rule 2-647, which authorizes a clerk to issue a writ of possession directing the sheriff to place a party in possession of real property, gives the Sheriffs the authority to do anything beyond placing parties in possession of the property, *i.e.*, the Rule does not expressly authorize the mover

_____

[14]Although the petition for a writ of *certiorari* included four questions presented, because of the interrelated nature of the questions, we address them together.

- 15 -

and weather policies. Thornton Mellon also points out that Maryland Rule 2-641, which it acknowledges has no application to the service of writs of possession and instead applies to writs of execution,[15] contemplates that sheriffs may be instructed to remove personal property from premises and are authorized to require a bond to cover their expenses. According to Thornton Mellon, because Maryland Rule 2-647 provides no authorization to require a bond, a sheriff cannot require a party to pay anything more than a fee for the writ of possession and cannot require payment to a third-party moving company.

Thornton Mellon contends that the mover policy is not necessary to avoid conversion of residents' personal property because it is an incorrect assumption that personal property left on a premises will somehow be deemed converted when the premises is placed under its control. Thornton Mellon asserts that placing a tax sale buyer in possession of real property where personal property remains on the premises does not satisfy the elements of the tort of conversion as to the personal property. In addition, Thornton Mellon maintains that the mover policy subjects tax sale buyers to substantial unnecessary costs and does not serve to protect residents' personal property.

Thornton Mellon maintains that its position is not that there should be no policy regarding serving writs of possession in extreme weather conditions, but rather that such a policy must be set by an entity with policymaking authority, not the Sheriffs. In addition,

---

[15]A writ of execution—also known as an execution writ, an execution, an execution of judgment, a judgment execution, a general execution, or *fieri facias*—is "[a] court order directing a sheriff or other officer to enforce a judgment, usu[ally] by seizing and selling the judgment debtor's property <the court issued the execution authorizing seizure of the car>[.]" *Execution*, Black's Law Dictionary (11th ed. 2019).

Thornton Mellon asserts that the weather policy is unclear and not employed consistently across the State, and that the Sheriffs have engaged in "arbitrary 'rulemaking.'" Thornton Mellon argues that because under RP § 8-401(f)(2) only administrative judges may stay service of warrants of restitution during extreme weather conditions, RP § 8-401(f)(2) does not give sheriffs the authority to refuse to serve writs of possession due to extreme weather. Thornton Mellon maintains that the Sheriffs do not have the implied power to enforce the weather policy, as the Sheriffs do not have such power in landlord-tenant matters.

Finally, Thornton Mellon asserts that summary judgment was inappropriate because there were genuine disputes of material fact concerning the content of the mover policy and the weather policy. Thornton Mellon maintains that there was no evidence concerning the substance of the mover policy in Baltimore, Frederick, and Howard Counties, as the counties relied on the affidavit of Acting Lieutenant Andre, an officer from Anne Arundel County. Thornton Mellon argues that there was no evidence concerning the weather policy in Howard County, as the Sheriff submitted only the affidavit of Acting Lieutenant Andre, and that there were disputes of fact concerning the weather policy in Anne Arundel, Baltimore, and Frederick Counties.

The Sheriffs respond that, as government officials, they are tasked with serving writs of possession and have the "reasonable discretion to carry out 'fairly implied' powers incident to those duties or authorities expressly granted." The Sheriffs contend that their implied authority is limited only to the extent that it must be exercised reasonably and not arbitrarily or capriciously. The Sheriffs argue that it is reasonable for them to avoid serving two identical forms of judicial process—writs of possession and warrants of restitution—

in an inconsistent manner. The Sheriffs assert that by adopting the mover policy and the weather policy, they serve writs of possession in a manner that is consistent with the service of warrants of restitution and that they have the implied power to bring such consistency to the service of judicial process.

The Sheriffs contend that the mover policy is necessary to avoid converting residents' personal property, which is not subject to writs of possession in tax sale foreclosure cases. The Sheriffs assert that, if they did not follow the mover policy, residents could sue the Sheriffs for conversion, and it would not be a defense that the Sheriffs acted in good faith. The Sheriffs maintain that RP § 8-401(f)(1)(i) reflects a public policy that when a tenant is evicted from a property, the tenant's personal property is to be removed and not left on the premises to be considered abandoned. The Sheriffs point out that Baltimore City is a jurisdiction with an exception to this rule, as its local law expressly provides that "[a]ll property in or about leased premises at the time that the warrant of restitution is executed is abandoned." Balt. City Code, Art. 13, § 8A-4(a).

The Sheriffs contend that the weather policy is necessary to avoid exposing vulnerable individuals who may not have immediate access to shelter to the risks of illness, injury, or death. The Sheriffs argue that RP § 8-401(f)(2) reflects a public policy not to evict residents during extreme weather conditions, and that the legislative history of the provision demonstrates that the General Assembly intended for sheriffs not to proceed with evictions during extreme weather conditions.

The Sheriffs maintain that Thornton Mellon is not entitled to relief because they brought a facial challenge (as opposed to an as-applied challenge) to the mover policy and

the weather policy and Thornton Mellon has failed to establish that there is no set of circumstances under which the policies would be valid. The Sheriffs argue that this Court has never interpreted CJ § 2-301(a) or Maryland Rule 2-647 (on which Thornton Mellon relies) as depriving sheriffs of the ability to develop policies as to the service of writs. The Sheriffs contend that the duty to serve writs is discretionary rather than ministerial. The Sheriffs assert that Thornton Mellon's reliance on the distinction between discretionary duties and ministerial ones is misplaced because the distinction applies to tort cases in which the doctrine of public official immunity shields certain government officials from liability for acts that are discretionary, and that the distinction has no relevance in determining whether a government official possesses the implied authority to take a reasonable action. Finally, the Sheriffs maintain that there is no genuine dispute of material fact concerning the mover policy or the weather policy, that Thornton Mellon has not disputed that the policies are materially the same across the jurisdictions at issue, and that Thornton Mellon has essentially conceded that there is no genuine dispute of material fact by filing a substantively identical complaint in each of the jurisdictions.

## Standard of Review

An appellate court reviews without deference a declaratory judgment issued pursuant to a motion for summary judgment. See Emerald Hills Homeowners' Ass'n, Inc. v. Peters, 446 Md. 155, 161, 130 A.3d 469, 473 (2016).

## Fairly Implied Powers

In Faison-Rosewick, 434 Md. at 523, 76 A.3d at 1017, we recognized the principle that government officials may exercise powers fairly implied by their express powers and

duties as long as they do so in a manner that is reasonable rather than arbitrary and capricious. In Faison-Rosewick, id. at 525, 76 A.3d at 1018, where a statute stated that a Town Manager had the power to verify voters' signatures and ascertain that there were enough for a referendum and the statute did not expressly indicate that procedures could be created for verifying the signatures, we held that the Town Manager had the implied power to create and publish procedures to be used to verify signatures on a petition necessary to have a referendum. The case involved the passage by a Town Council of a resolution that would let the Town annex land so that retail stores and offices, including a Walmart, could be built. See id. at 500-01, 76 A.3d at 1004. Citizens of the Town and other interested individuals circulated a petition to have a referendum on the annexation resolution and three related resolutions. See id. at 501, 76 A.3d at 1004.

The Town Manager posted on the website of the Town an eight-page document with procedures that the Manager would follow to verify the signatures on the petition. See id. at 502, 76 A.3d at 1004. The procedures established criteria to guide the Town Manager in the validation and verification of signatures on the petition. See id. at 502, 76 A.3d at 1005. For example, the procedures provided that if the Town Manager determined that the petition form was not legally sufficient, the petition would be rejected. See id. at 502, 76 A.3d at 1005. In the alternative, if the Town Manager found that the form of the petition was legally sufficient, verification of the signatures would begin. See id. at 502, 76 A.3d at 1005. Or, if the legal sufficiency of the petition could not be reasonably determined but the Town Manager found that validating the petition was in the interest of orderly management of the referendum process, the Town Manager would begin to validate the

signatures. See id. at 502, 76 A.3d at 1005. Ultimately, the Town Manager verified that the petition had a sufficient number of signatures. See id. at 502, 76 A.3d at 1005.

Opponents of the referendum, including citizens of the Town, landowners, and developers, petitioned for judicial review of the Town Manager's determination. See id. at 504, 76 A.3d at 1006. The referendum supporters filed a motion to intervene, which the trial court granted. See id. at 504, 76 A.3d at 1006. The trial court ruled in favor of the referendum opponents, reasoning that the Town Manager lacked the power to come up with procedures for verifying the signatures on the petition. See id. at 505, 76 A.3d at 1006.

We agreed with the Town and the supporters of the referendum that the Town Manager had the power to adopt procedures for verifying the signatures on the petition. See id. at 522, 525, 76 A.3d at 1016, 1018. We acknowledged that the relevant statute stated only that the Town Manager had the power to verify signatures and ascertain that there were enough signatures, and that the statute did not expressly indicate that the Town Manager could create procedures for verifying signatures. See id. at 523, 76 A.3d at 1017. Nonetheless, we determined that the Town Manager's creation and publication of procedures to be used to verify signatures on the petition constituted a reasonable means of discharging the expressly given duty to verify signatures. See id. at 524-25, 76 A.3d at 1018. We stated:

> The statute unambiguously provides the chief executive and administrative officer of the municipal corporation, here the Town Manager, the power to "cause to be made a verification" of the signatures on the petition and ascertain that the requisite number of qualified signatures are present. § 19(g). The statute, therefore, does not grant the express authority

- 21 -

to create verification and validation procedures.  Generally, however, a government official or agency has reasonable discretion to carry out "fairly implied" powers incident to those duties or authority expressly granted.  *See River Walk Apartments, LLC v. Twigg*, 396 Md. 527, 543, 914 A.2d 770, 779-80 (2007) (recognizing that municipalities may exercise powers that are necessary, fairly implied, or incident to "the powers expressly granted").

Faison-Rosewick, 434 Md. at 523, 76 A.3d at 1017.  We stated that "[t]he exercise of implied or discretionary authority is limited in that it must be exercised reasonably, not arbitrarily or capriciously."  Id. at 523, 76 A.3d at 1017 (citation omitted).[16]

---

[16]More than a century ago, in Heiskell v. City Council of Balt., 65 Md. 125, 4 A. 116, 118 (1886), we acknowledged that a governmental entity can have powers fairly implied by its express powers, stating that "a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation[.]" (Cleaned up).  We have restated this principle several times, including recently in K. Hovnanian Homes of Maryland, LLC v. Mayor of Havre de Grace, 472 Md. 267, 288, 244 A.3d 1174, 1186 (2021).  In a different line of cases, we have stated that an administrative agency's decision not to exercise its discretionary power is reviewed under an arbitrary or capricious standard.  See Harvey v. Marshall, 389 Md. 243, 276, 884 A.2d 1171, 1191 (2005) (citing Spencer v. Bd. of Pharmacy, 380 Md. 515, 527, 846 A.2d 341, 348 (2004)).

Implied authority and discretionary authority are two separate concepts.  "Implied" is defined as "1. Not directly or clearly expressed; communicated only vaguely or indirectly <counsel's implied statement>. 2. Recognized by law as existing inferentially <implied agreement>." *Implied*, Black's Law Dictionary (11th ed. 2019).  "Discretionary" is defined as "(Of an act or duty) involving an exercise of judgment and choice, not an implementation of a hard-and-fast rule exercisable at one's own will or judgment." *Discretionary*, Black's Law Dictionary (11th ed. 2019).  In Faison-Rosewick, 434 Md. at 523, 76 A.3d at 1017, after explaining that municipalities may exercise powers that are necessary, fairly implied, or incident to expressly granted powers, we stated that "[t]he exercise of implied or discretionary authority is limited in that it must be exercised reasonably, not arbitrarily or capriciously." (Citing Harvey, 389 Md. at 303, 884 A.2d at 1207).  Thus, we apply the same standard with respect to the review of implied authority as discretionary authority, *i.e.*, the exercise of both types of authority must be reasonable and not arbitrary or capricious.

**Sheriffs' Express Duties**

Md. Const., Art. IV, § 44 states that a sheriff "shall . . . exercise such powers and perform such duties as now are or may hereafter be fixed by law."  The Maryland Constitution does not expressly identify the powers and duties of a sheriff.  See Soper v. Montgomery Cnty., 294 Md. 331, 337, 449 A.2d 1158, 1161 (1982).  The powers and duties of a sheriff are defined by the common law, as modified by statute.  See id. at 337, 449 A.2d at 1161.

CJ § 2-301(a) is an example of a statute that sets forth an express duty of a sheriff and states that, generally, "the sheriff shall serve all papers directed to him according to their instructions, within the time set by the court."  Maryland Rule 2-647 concerns writs of possession and states in pertinent part:

> Upon the written request of the holder of a judgment awarding possession of property, the clerk shall issue a writ directing the sheriff to place that party in possession of the property.  The request shall be accompanied by instructions to the sheriff specifying (a) the judgment, (b) the property and its location, and (c) the party to whom the judgment awards possession.  The clerk shall transmit the writ and the instructions to the sheriff.

Maryland Rule 2-641(c) concerns writs of execution and states in pertinent part:

> Upon issuing a writ of execution or receiving one from the clerk of another county, the clerk shall deliver the writ and instructions to the sheriff. . . . If the instructions direct the sheriff to remove the property from the premises where found or to exclude others from access to or use of the property, the sheriff may require the judgment creditor to file with the sheriff a bond with security approved by the sheriff for the payment of any expenses that may be incurred by the sheriff in complying with the writ.

**RP § 8-401(f)(1)(i) and (f)(2)**

RP § 8-401 concerns summary ejectment actions by landlords.  RP § 8-401(f)(1)(i)

- 23 -

addresses the removal of a tenant's personal property, stating:

> Subject to the provisions of (2) of this subsection, if judgment is given in favor of the landlord, and the tenant fails to comply with the requirements of the order within 4 days, the court shall, at any time after the expiration of the 4 days, issue its warrant, directed to any official of the county entitled to serve process, ordering the official to cause the landlord to have again and repossess the property by putting the landlord (or the landlord's duly qualified agent or attorney for the landlord's benefit) in possession thereof, and for that purpose to remove from the property, by force if necessary, all the furniture, implements, tools, goods, effects or other chattels of every description whatsoever belonging to the tenant, or to any person claiming or holding by or under said tenant.

RP § 8-401(f)(2) addresses the execution of a warrant of restitution in extreme weather conditions, stating:

> (i) The administrative judge of any district may stay the execution of a warrant of restitution of a residential property, from day to day, in the event of extreme weather conditions.
>
> (ii) When a stay has been granted under this paragraph, the execution of the warrant of restitution for which the stay has been granted shall be given priority and completed within 3 days after the extreme weather conditions cease.

The relevant legislative history of RP § 8-401(f)(2) is as follows. In 1985, a bill that would have required or allowed evictions in landlord-tenant cases to be postponed in inclement weather was introduced but not passed. The original version of House Bill 1607 (1985) would have amended Md. Code Ann., Real Prop. (1974, 1981 Repl. Vol., 1984 Supp.) § 8-401(d) by adding the following language as new paragraph (2):

> An official who is ordered by warrant to return possession of the property to the landlord and to remove any of the tenant's property: (i) May not carry out the order in rain, snow, sleet, hailstorm, windstorm, or when the temperature is at or below 0 degrees Fahrenheit; and (ii) Shall carry out the order as soon as the rain, snow, sleet, hailstorm, or windstorm stops, or when the temperature rises above 0 degrees Fahrenheit.

- 24 -

(Paragraph breaks omitted).  On the recommendation of the Honorable Robert F. Sweeney, Chief Judge of the District Court of Maryland, House Bill 1607 (1985) was amended to simply provide that "[t]he administrative judge of any district may stay the execution of a warrant of restitution, from day to day, in the event of extreme weather conditions."  In a handwritten annotation to a copy of the amended version of House Bill 1607 (1985), Chief Judge Sweeney observed that administrative judges in most districts postponed evictions in poor weather, that landlords in some districts protested and pointed out that there was no authority for such postponements, and that House Bill 1607 (1985) would render the landlords' protests moot.

In 1987, the General Assembly enacted the earliest version of RP § 8-401(f) by passing two bills whose final versions were substantively identical to each other.  See 1987 Md. Laws 2082 (Pt. 3, Ch. 408, S.B. 926); 1987 Md. Laws 3324 (Pt. 5, Ch. 740, H.B. 1415).  The original versions of the bills, however, differed from each other.  The original version of House Bill 1415 (1987) would have created a new statute stating:

> Notwithstanding any other provision of this subtitle, a tenant may not be evicted from leased premises on a day when: (1) The National Weather Service predicts at 8:00 a.m. that the temperature for the area containing the leased premises will not exceed 32 degrees Fahrenheit within the next 24 hours; (2) The Governor has declared an emergency for the area containing the leased premises due to weather conditions; or (3) A judge for the district contained the leased premises stays the execution of a warrant of restitution for the premises due to inclement weather conditions.

Id. at 3324 (paragraph breaks omitted).  Meanwhile, the original version of Senate Bill 926 (1987) would have created a new statute stating: "(a) In this section 'inclement weather conditions' includes: (1) snow; (2) sleet; (3) hail; (4) rain; and (5) high winds. (b)

- 25 -

Notwithstanding any other provision of this subtitle, an evicting officer may delay implementation of a warrant for repossession of leased premises because of inclement weather conditions." Id. at 2081-82 (paragraph breaks omitted).

In a letter to the Chair of the Judicial Proceedings Committee of the Senate, the Chair of the Real Property Code Revision Committee observed that, under Senate Bill 926 (1987), there would not be a court order for an evicting officer to rely on, and an evicting officer would not be required to postpone service of a warrant of restitution in extreme weather conditions. The Chair asserted that, accordingly, Senate Bill 926 (1987) would provide an evicting officer with discretion that the evicting officer should not have. The Chair proposed that Senate Bill 926 (1987) be amended to allow a judge to issue a court order precluding an evicting officer from serving a warrant of restitution in extreme weather conditions. In a letter to the sponsor of Senate Bill 926 (1987), Chief Judge Sweeney recommended amending it to replace the existing language with that of the amended version of House Bill 1607 (1985), which would allow an administrative judge to postpone service of a warrant of restitution. Both Senate Bill 926 (1987) and House Bill 1415 (1987) were amended to implement Chief Judge Sweeney's recommendation and to add what is now RP § 8-401(f)(2)(ii), which concerns when a sheriff must serve a warrant of restitution after a stay due to extreme weather conditions.[17]

---

[17]In 1997, the General Assembly amended Md. Code Ann., Real Prop. § 8-401(d)(2)(i) so that it reads as RP § 8-401(f)(2)(i) does, adding the phrase "of a residential property[.]" 1997 Md. Laws 4010 (Vol. VI, Ch. 692, H.B. 761).

**Authority for the Policies May Be Fairly Implied**

In this case, like the Court of Special Appeals, we conclude that sheriffs may exercise the same fairly implied powers to which other public officials are entitled and when sheriffs are given an express power or duty by the General Assembly, a sheriff is also given all powers that are fairly implied to exercise or safely fulfill the express power or duty. Under CJ § 2-301(a), sheriffs must serve all papers directed to them, including writs of possession and warrants of restitution. Under Maryland Rule 2-647, when serving writs of possession, sheriffs must place plaintiffs in possession of real property. RP § 8-401(f)(1)(i) requires that, in landlord-tenant cases, a tenant's personal property be removed from the premises by the landlord. Thus, under RP § 8-401(f)(1)(i), when serving warrants of restitution, sheriffs must require landlords to remove personal property from the premises. Under RP § 8-401(f)(2)(i), administrative judges may stay the execution of warrants of possession during extreme weather conditions, and sheriffs must postpone service of the warrants. From these statutes it can be fairly implied that the Sheriffs have the power to adopt both the mover policy and the weather policy in connection with the service of writs of possession.

We disagree with Thornton Mellon's contention that it cannot be inferred that the provisions of RP § 8-401 give rise to the conclusion that the Sheriffs have the fairly implied power to serve writs of possession in tax sale foreclosure cases in a manner similar to the service of warrants of restitution in landlord-tenant cases. We also disagree with Thornton Mellon to the extent that it contends that the Sheriffs cannot adopt the mover policy and the weather policy for the service of writs of possession because the policies are not

expressly authorized under any statute or Maryland Rule, such as CJ § 2-301(a) or Maryland 2-647. The point of our holding in <u>Faison-Rosewick</u>, 434 Md. at 523, 76 A.3d at 1017, in which we explained that government officials have fairly implied powers, is that government officials are not necessarily limited to powers expressly set forth in a statute or rule. Rather, government officials may have powers fairly implied by their express authority and duties. That a particular action by a government official may not be expressly authorized by a statute is the start of the analysis in determining whether the official is authorized to take an action, not the end. In this case, it is not dispositive that CJ § 2-301(a), Maryland Rule 2-647, and RP § 8-401 are silent as to a sheriff's ability to adopt a mover policy and a weather policy to serve writs of possession. What is critical is that when considered together, these provisions lead to the conclusion that the Sheriffs have the implied power to adopt the mover policy and the weather policy in connection with service of writs of possession, and that the policies are not arbitrary or capricious and do not conflict with any applicable statute or rule.

### The Mover Policy

The mover policy is essentially the same as the process required by statute when a sheriff serves a writ of restitution to evict a tenant in a landlord-tenant case. <u>See</u> RP § 8-401(f)(1)(i). As indicated by Acting Lieutenant Andre's affidavit concerning the mover policy, there is no functional difference between the execution of warrants of restitution and writs of possession because, in serving both types of papers, the Sheriffs must transfer possession of real property from residents to plaintiffs. Thornton Mellon contends that the mover policy results in additional costs and discourages participation in the tax sale

- 28 -

business. We are not persuaded that this is a reason to conclude that the mover policy should be invalid or not fairly implied. In the complaints, Thornton Mellon LLC described itself as "a large institutional tax sale buyer" that regularly assigns tax sale certificates and judgments to three other entities—Ty Cobb LLC, Danny Noonan LLC, and Al Czervik LLC. Thornton Mellon has achieved the status that it describes with the mover policy in use in the four jurisdictions at issue. Put simply, we are not convinced that Thornton Mellon has been deterred from participation in the tax sale business because of costs associated the mover policy.

In any event, regardless of whether the mover policy is costly or acts as a deterrent on some level to Thornton Mellon's participation in the tax sale business (which we do not believe it does), the question is whether the Sheriffs had the authority to adopt the mover policy. We hold that the Sheriffs did. Just as the Town Manager in Faison-Rosewick, 434 Md. at 525, 76 A.3d at 1018, had the fairly implied power to create and publish procedures to be used to verify signatures on a petition to have a referendum, the Sheriffs have the fairly implied power to adopt the mover policy. It would be inconsistent with the principles underlying RP § 8-401(f)(1) for the Sheriffs to not be allowed to adopt a mover policy in connection with the execution of writs of possession.

The mover policy serves the goal of promoting consistency and efficiency in connection with the execution of warrants of restitution and writs of possession, which in turn furthers the goals of fair and equal treatment of residents in the eviction process, maintaining good relations between law enforcement officers and the public, and the protection of the personal property of residents who are evicted. The mover policy is

plainly not arbitrary and capricious, as adopting Thornton Mellon's position would result in former property owners being deprived of access to their personal property in a manner that tenants are not during evictions and in tax sale buyers being able to receive possession of real property potentially faster and at less expense than landlords due to being able to have writs of possession executed without being required to provide movers. The adoption of the mover policy promotes identifiably desirable and reasonable goals and cannot be said to be an arbitrary or capricious exercise of implied authority.

We are aware that the Sheriffs argue that adopting Thornton Mellon's position and prohibiting the mover policy for service of writs of possession would potentially expose the Sheriffs and the officers working with them to civil liability. It is not necessary, though, for us to determine whether the mover policy is required for the Sheriffs to avoid liability for the conversion of residents' personal property.[18] Under Md. Code Ann., Tax-Prop. (1986, 2019 Repl. Vol.) § 14-815, a tax collector's power "to sell property for the nonpayment of taxes exists notwithstanding the existence of personal property of the owner

---

[18]Conversion has two elements—"any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it[,]" and "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." Yuan v. Johns Hopkins Univ., 452 Md. 436, 463, 157 A.3d 254, 269-70 (2017) (cleaned up). The first element is satisfied where the defendant engaged in "the wrongful deprivation of" property, regardless of whether the defendant acquired the property. Id. at 463, 157 A.3d at 270 (citation omitted). The second element is satisfied where the defendant intended to exert control over the property, regardless of whether the defendant "acted in good faith and lacked any consciousness of wrongdoing[.]" Id. at 463, 157 A.3d at 270 (citation omitted). Regardless of the ultimate viability of such a claim, it appears that at the very least, were sheriffs to move or take control of personal property during the service of writs of possession, residents in tax sale foreclosure cases could bring actions against the Sheriffs alleging conversion, and the Sheriffs would be forced to defend themselves in costly, time-consuming lawsuits.

of the property to be sold." The residents' personal property is not subject to writs of possession in tax sale foreclosure cases. Although the viability of an action against the Sheriffs for conversion has not been tested, the adoption of a policy designed for the avoidance of potential civil liability for officers is not an arbitrary or capricious ground for determining the need for the policy. See Faison-Rosewick, 434 Md. at 523, 76 A.3d at 1017 ("The exercise of implied or discretionary authority is limited in that it must be exercised reasonably, not arbitrarily or capriciously." (Citation omitted)).

We are also aware that it would be physically possible for the Sheriffs to perform evictions without following the mover policy. For instance, in some other States that lack a counterpart to the mover policy, law enforcement officers perform evictions by giving residents a limited amount of time (such as ten minutes) to retrieve essentials, having the residents leave the premises, and then allowing a locksmith to change the locks. See, e.g., Eli Saslow, *The return of the 10-minute eviction*, *The Washington Post* (Dec. 15, 2021), available at https://www.washingtonpost.com/nation/2021/12/15/phoenix-evictions-pandemic/ [https://perma.cc/5SHC-GZPB]. As discussed above, though, it would be inconsistent with a variety of important goals to prohibit the Sheriffs from adopting the mover policy when serving writs of possession, where, by statute, a similar process is authorized for the service of warrants of restitution and the authority to adopt such a policy may fairly be implied from the Sheriffs' expressly authorized duties.

### The Weather Policy

The Sheriffs' policy of not serving writs of possession in extreme weather is consistent with the Sheriffs' express duties under CJ § 2-301(a) and the principle

underlying RP § 8-401(f)(2)(I), and is not arbitrary or capricious. Under CJ § 2-301(a), Sheriffs are required to serve all papers directed to them in accordance with instructions accompanying the papers, and within the time set by the court. Under RP § 8-401(f)(2)(I), administrative judges may stay the execution of warrants of restitution in extreme weather conditions. It would not be in keeping with the principles underlying RP § 8-401(f)(2) to prohibit the Sheriffs from adopting a policy aimed at not serving writs of possession in extreme weather conditions. For the Sheriffs to follow RP § 8-401(f)(2) in connection with warrants of restitution and have no weather policy in connection with the execution of writs of possession would cause residents in tax sale foreclosure cases to suffer disadvantages that tenants in landlord-tenant cases are not subject to.

If we adopted Thornton Mellon's position, residents in tax sale foreclosure cases could be evicted during extreme weather conditions, which, to put it mildly, could include potentially hazardous cold temperatures and snowstorms. We agree with the Sheriffs that such an outcome would potentially expose vulnerable individuals to the risks of illness or injury and would be at odds with "humanity, compassion, community relations, and practicality." If we adopted Thornton Mellon's position, Sheriffs would be required to put citizens at risk who would be evicted in extreme weather conditions and the officers working with them at risk by forcing them to serve writs of possession during adverse weather conditions. The Sheriffs' weather policy, which is designed to avoid these outcomes, is neither arbitrary nor capricious but rather furthers the reasonable purpose of ensuring the safety of the public as well as government officials.

- 32 -

Thornton Mellon's argument that the legislative history of RP § 8-401 shows that the Sheriffs do not have the authority to not serve writs of possession in extreme weather conditions is unconvincing. Thornton Mellon relies, in part, on a handwritten note made by the Chief Judge of the District Court, the Honorable Robert F. Sweeney, on a copy of the bill that was in the bill file for House Bill 1607 (1985). The bill was proposed but not passed by the General Assembly. In the note, Chief Judge Sweeney indicated that landlords "correctly" asserted that there was no authority to postpone evictions in bad weather and that the proposed bill authorizing the administrative judge of a district to stay the execution of a warrant of restitution would render such objections moot. Thornton Mellon points out that Senate Bill 926 (1987) and House Bill 1415 (1987), which were passed, gave authority to stay evictions to administrative judges not sheriffs and that later House Bill 761 (1997), which was passed, amended RP § 8-401(d) to give administrative judges authority to stay evictions due to extreme weather only with respect to residential properties. Thornton Mellon contends that these circumstances demonstrate that sheriffs do not have the authority to adopt a weather policy as to the service of writs of possession in tax sale foreclosure cases.

Contrary to Thornton Mellon's contention, though, the legislative history of RP § 8-401 does not lead to this conclusion. In a letter to the Chair of the Judicial Proceedings Committee of the Senate, the Chair of the Real Property Code Revision Committee expressed the concern that if under Senate Bill 926 (1987) there was not a provision for a court order for an evicting officer to rely on, an evicting officer would not be required to postpone service of a warrant of restitution in extreme weather conditions. In other words,

- 33 -

the Chair of the Real Property Code Revision Committee indicated that the availability of a court order would have the effect of ensuring that evictions did not occur in extreme weather conditions, not that sheriffs or evicting officers should not be trusted with or have the discretion to not serve a warrant of restitution in extreme weather conditions. In this regard, the legislative history of RP § 8-401 reveals an interest in developing a statute that would assure through the use of a court order issued by an administrative judge that evictions would be stayed in extreme weather, rather than the intent to deprive evicting officers or sheriffs of the ability to refrain from serving warrants of restitution in extreme weather conditions.

### Additional Considerations

We disagree with Thornton Mellon's contention that the Sheriffs did not have the authority to adopt the mover and weather policies for the service of writs of possession because according to Thornton Mellon, serving a writ of possession is a ministerial duty. As the Sheriffs points out, Thornton Mellon's reliance on the distinction between discretionary duties and ministerial ones is misplaced because that distinction is relevant only to tort cases involving the doctrine of public official immunity, which "applies to public officials . . . who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties." Cooper v. Rodriguez, 443 Md. 680, 713, 118 A.3d 829, 848 (2015) (cleaned up). Nothing in our case law indicates that the distinction between discretionary duties and ministerial ones is relevant to the entirely separate issue of whether a government official's action was a valid exercise of "fairly implied powers incident to those duties or authority expressly granted." Faison-Rosewick, 434 Md. at 523, 76 A.3d

- 34 -

at 1017 (cleaned up). In other words, our case law does not support the conclusion that addressing whether the serving writs of possession involves a discretionary duty or a ministerial one is necessary to a determination as to whether the Sheriffs have the implied authority to adopt the mover policy and weather policy. In addition, we are unpersuaded by Thornton Mellon's reliance on CJ § 2-301(a) (under which a sheriff must serve papers directed to the sheriff per the instructions contained in the papers), and Maryland Rules 2-647 (which concerns writs of possession) and 2-641 (which concerns writs of execution) for the proposition that a sheriff's duty to serve writs is ministerial rather than discretionary. We agree with the Sheriffs that, given the various considerations at play when they perform evictions, serving writs of possession involves a discretionary duty, not a ministerial one.

Next, the Sheriffs allege that Thornton Mellon brought a facial challenge to the mover and weather policies as opposed to an as-applied challenge and failed to establish that there is no set of circumstances under which the policies could be valid. We agree. When making a facial challenge, a party claims that a law or policy is invalid on its face and could never be found to be valid. See Powell v. Md. Dep't of Health, 455 Md. 520, 550, 168 A.3d 857, 875 (2017). With an as-applied challenge, a party contends that a law or policy has an unconstitutional effect on the party. See id. at 550, 168 A.3d at 875.

In this case, although Thornton Mellon alleged that the mover and weather policies generally place a financial burden on tax sale buyers like itself who would be required to pay for movers and who would have evictions delayed in bad weather conditions, Thornton Mellon supplied no counter-affidavit or information concerning any actual or particular effect of the policies on it. Thornton Mellon's allegations in each of the complaints amount

- 35 -

to it raising a general or facial challenge to the policies as having an overall negative impact upon tax sale buyers. Thornton Mellon did not demonstrate that there is no set of circumstances under which the policies could be found to be valid. And, as explained, Thornton Mellon did not allege sufficient information to sustain an as-applied challenge.

We are mindful of Thornton Mellon's argument that local governments benefit from tax sales because they recover revenue lost by property owners' failure to pay taxes on the properties in question and, according to Thornton Mellon, the Sheriffs' mover and weather policies interfere with a local government's ability to recover revenue. From our perspective, though, that tax sales may serve as a potential source of revenue for local jurisdictions does not mean that Thornton Mellon may gain possession of property under conditions not safe for the residents or Sheriffs and at the Sheriffs' expense.

**No Genuine Dispute of Material Fact**

We are unpersuaded by Thornton Mellon's position that genuine disputes of material fact concerning the mover and weather policies precluded summary judgment. In each complaint, Thornton Mellon characterized the mover policy as a practice of requiring them to bring a sufficient number of movers when the Sheriffs serve writs of possession. The Sheriffs attached to each motion to dismiss an affidavit in which Acting Lieutenant Andre averred that the Anne Arundel County Sheriff requires a plaintiff to provide movers where there is personal property on the premises that is not trash. Acting Lieutenant Andre also averred that, to the best of his knowledge and belief, the mover policy in Anne Arundel County is the policy and practice of every sheriff in Maryland, with some slight variations. Thornton Mellon's characterization of the mover policy in the complaints and Acting

Lieutenant Andre's description of the policy in his affidavit are completely consistent with each other. Thornton Mellon fails to draw our attention to any evidence whatsoever that would undermine Acting Lieutenant Andre's averment that the mover policy is essentially the same in every jurisdiction in Maryland. Nor does Thornton Mellon explain how any variations in the mover policy across jurisdictions would be material to the issue before us.

There is no genuine dispute of material fact as to the weather policy either. In each complaint, Thornton Mellon characterized the weather policy as a practice of refusing to serve writs of possession during months when the weather is poor. The Sheriffs attached to the motions to dismiss affidavits from Acting Lieutenant Andre, Sergeant Gregory, and Deputy Sheriff Hernandez describing the applicable weather policy. According to the affidavits, the Sheriffs of Anne Arundel and Frederick Counties do not serve warrants of restitution or writs of possession during extreme weather conditions, and the Sheriff of Baltimore County does not serve warrants of restitution or writs of possession when Baltimore County courthouses and other Baltimore County government buildings are closed due to inclement weather. In Howard County, the Sheriff attached Acting Lieutenant Andre's affidavit concerning the weather policy in support of the motion to dismiss.[19] All three affidavits stated that, in an instance of extreme or inclement weather, the Sheriff will serve writs of possession or warrants of restitution as soon as weather

_____

[19]In the memorandum supporting his motion to dismiss, the Howard County Sheriff indicated that Acting Lieutenant Andre's description of the weather policy in Anne Arundel County was an accurate summary of the policy in Howard County. Thornton Mellon fails to draw our attention to any evidence whatsoever that the weather policy in Howard County differed at all from the policy in Anne Arundel County, let alone in a way material to the issue before us.

conditions improve. All three affidavits stated that the Sheriffs do not generally refuse to serve writs during months when the weather is poor.

In opposition to the motions to dismiss, Thornton Mellon contended that there was no way to know or plan for how the Sheriffs would choose to follow the weather policy and asked rhetorical questions, such as: "Are there certain months that writs simply will not be issued?" Thornton Mellon does not identify any evidence contradicting the averments that the Sheriffs do not refuse to serve writs of possession during months when the weather is poor nor did Thornton Mellon provide a counter-affidavit to that effect.[20] Without more, Thornton Mellon's bald, unsupported allegation in the complaints, *i.e.*, that the Sheriffs refuse to serve writs during certain months, is insufficient to generate a genuine dispute of material fact.

## Conclusion

The Sheriffs' ability to adopt mover and weather policies is fairly implied from the express powers and duties afforded sheriffs and the policies are neither unreasonable, arbitrary, nor capricious. In addition, notwithstanding that they have fallen behind on their property taxes, the former property owners are people and deserve to be treated humanely and, at the very least, with a basic level of dignity. We affirm the judgment of the Court of Special Appeals, affirming the circuit courts' grant of judgment in favor of the Sheriffs.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS.**

---

[20]Indeed, Thornton Mellon's above-quoted rhetorical question in the oppositions to the motions to dismiss suggests that there is no such evidence.